RichardsoN, Oil. J.,
delivered the opinion of the court:
Before the passage of the Act of July 12,1876, chapter 179 (1 Supp. Rev. Stat., 224), the claimant corporation had been carrying the mails of the United States between New York and Buf-faia daily, both ways by one postal car, upon an ordinary passenger train, and also by a fast exclusively mail train of four postal ears, and had received the compensation prescribed by the then existing law (Rev. Stat., § 4002, reproduced from the act of 1873, ch. 231).
That act reduced the compensation to be paid to all railroad companies for the transportation of the mails 10 per cen-tum per annum from the rates fixed by the act of 1873 and Revised Statutes, section 4002. Thereupon the claimant corporation refused to continue the service by the fast mail train, and it was thereafter performed by one postal car on an odinary passenger train.
On the 3d of March, 1877, Congress passed the post-office appropriation act of that date, chapter 110, which, among other provisions, contained the following (19 Stat. L., 384):
“ For transportation by railroad, $9,250,000; $150,000 of the same may be used by the Postmaster-General to obtain proper facilities from the great trunk lines of railroads for the railway post-office service during the fiscal year ending June 30,1878.”
On the 18th of December, 1877, the claimant and the Postmaster-General entered into a written contract, annexed to the petition, by which greater facilities were to be obtained from the claimant corporation for the railway post-office service on and after January 1, 1878. On the part of the defendants it was agreed as follows :
“ Sixth. The said Department agrees that for the mail service performed under this agreement the said company shall be paid the general rate of compensation now allowed by law, and, in addition thereto, and out of the special appropriation made by the act of July, 1876 (for procuring additional postal-car facilities on the trunk lines during the present fiscal year of the United States), or any act hereafter passed for a similar purpose, an amount which shall make its rate of compensation at least equal to the rate allowed by the act of March 3, 1873.”
It is conceded on both sides that the reference to the act of July, 1876, was an inadvertence, and that the act intended was that of March 3, 1877, from which we have made an extract *470 above. This becomes apparent also upon examination of the statutes, and no point is made upon it by either party.
From the 31st of December, 1877, to the 1st of January, 1882, the defendants furnished daily to the claimant mail matter for transportation, and the claimant transported the same according to said contract.
Payment was made by the defendants for the service to and including June 30, 1878, as agreed by the sixth article of the contract, but since that time there has been paid out of the special appropriations made by subsequent acts “ for procuring additional postal-car facilities on the trunk lines ” only a small part of the amount due by the contract.
For the defendants it is contended that the contract, depending alone on appropriations for its validity, was not binding upon the Government beyond the appropriation for the ñscal year in which it was made, and for that time the claimant has been paid.
We have frequently held that “ where an alleged liability rests wholly upon the authority of an appropriation, they must stand and fall together, so that when the latter is. exhausted the former is at an end, to be revived, if at all, only by subsequent legislation by Cougress.” (Shipman’s Case, 18 C. Cls. R., 147; Trenton Company’s Case, 12 id., 157; Beaman’s Case, 19 id., 5.)
Had Congress made no further appropriation after that for the fiscal year ending June 30, 1878, there would have been an end of the contract, because by its very terms payment was to be made out of special appropriations to be made by any act thereafter passed for a similar purpose, aud therefore on condition that such appropriations should be made.
But Congress did pass a subsequent act each year, making appropriation for the same or a similar purpose, and thus the condition upon which the contract was to continue was fulfilled. Those appropriations were as follows :
“ For transportation by railroad, $9,100,000.
“One hundred and twenty-five thousand dollars of which sum may be used by the Postmaster-General to obtain proper facilities from the great trunk lines of railroads for the railway post-office service during the fiscal year ending June 30, 1879.,? (20 Stat. L., 142.)
“For transportation by railroad, $9,150,000.
“Of'which sum $150,000 may be used by the Postmaster- *471 General to maintain and secure from railroads necessary and special facilities for tbe postal service for the fiscal year ending June 30, 1880.” (20 Stat. L., 357.)
“ For transportation on railroad routes, $9,665,000.
“Of which sum $350,000 may be used by the Postmaster-General to maintain and secure from railroads necessary and special facilities for the postal service for the fiscal year ending June 30, 1881.” (21 Stat.L., 178.)
“For necessary and special facilities on trunklines, $425,000.” (21 Stat. L., 376, appropriation for year ending June 30, 1882.)
Those appropriations contemplated that the Postmaster-General would make arrangements with trunk lines for such additional facilities as in his discretion seemed best for the service, to be paid for out of the money thus allowed, in addition to the uniform rates fixed by general laws for ordinary railroad mail service.
When, therefore, at the beginning of each fiscal year the Postmaster-General employed the claimant exactly.as provided in the contract, and furnished for transportation the mails in accordance therewith, and continued to do so throughout the year, he exercised the discretion intrusted to him, renewed and extended the contract for that year, and the defendants became liable for payment as agreed upon.
The case is identical in principle with that of McCullom (17 C. Cls. r., 92), which has been subsequently cited and reaffirmed in several cases. (Shipman’s Case, 18 id., 147; Dougherty's Case, 18 id., 503; Beaman's Case, 19 id., 9.) That case was founded upon a contract of lease for five years made by the PostmusterGeneral with the claimant. Of its validity, force, effect, and construction, the court said:
“The contract was made in the latter p'art of March, 1878. It must be construed with reference to the statutes then in force.
“At that time there was but one appropriation under which it could be made. This is found in the Act of March 3, 1877, chapter 110 (19 Stat. L., 384), making appropriations for the service of the Post-Office Department for the fiscal year ending June 30, 1878, in these words:
“ ‘For rent, light, and fuel, $400,0002
“ This had not been exhausted, but there remained of it sufficient to meet the requirements of the contract up to the end of that fiscal year. So far, therefore, as tire contract relates to> that fiscal year it was lawfully made and was binding on the defendants.
“ Beyond that its only force was to give the Postmaster-Gen *472 eral each fiscal year thereafter, when a new appropriation should be made, the option to adopt and ratify the contract for another year. This he might do by express notice to that effect, or by entry and occupation of the premises after the commencement of the year.
“ If he should occupy the premises after the beginning of the new year, he might be held to have renewed the obligation on the part of the defendants for that one year.”
Sections 3679 and 3732 of the Revised Statutes were relied upon by the defendants in that case as in this, and we held that they were not in any particular violated. They are as follows:
“ Sec. 3679. No Department of the Government shall expend, in any one fiscal year, any sum in excess of appropriations made by Congress for that fiscal year, or involve the Government in any contract for the future payment of money in excess of such appropriations.
“ Seo. 3732. No contract or purchase on behalf of the United States shall be made, unless the same is authorized by law or is under an appropriation adequate to its fulfillment, except in the War and Navy Departments, for clothing, subsistence, forage, fuel, quarters, dr transportation which, however, shall not exceed the necessities of the current year.”
The contract now in suit is more carefully guarded in its language against any infringement of the provisions of those sections than was the one involved in that case, by expressly limiting the liability of the Government to the contingency of future appropriations by Congress.
Those sections apply to the public service in general and must not only be construed in connection with other statutes, but must yield to the special provisions directly and solely applicable to the .Post-Office Department.
The immense postal service, interwoven as it is with all the business and social interest of the people, is a continuing service which must be provided for not separately for one year but for succeeding years, often in advance of, but in reliance upon, the usual annual appropriations. Much is specially intrusted to the judgment and discretion of the Postmaster-General. A whole chapter of the Revised Statutes is devoted to the subject of contracts for carrying the mails (§§ 3941-3963). The Postmaster-General is authorized to enter into such contracts, and the only limitation as to the time they may run is found in section 3956, where there is a prohibition against making them for *473 a longer term than four years by laud and two years by sea, and this latter limitation is changed to four years by the Act of May 17, 1878, chapter 107, section 5 (1 Supp. Rev. Stat-., 324).
The Post-Office Department has established regulations founded upon the recognized right to enter into mail transportation contracts for more than one year. (Jacksonville, Pensacola and Mobile R. R. Co. Case, 21. C. Cls. R., —.)
Several contracts of that kind for which no appropriations were made beyond the current year have been upheld by this court and the Supreme Court. (Cases of Illinois Central R. R. Co., 18 C. Cls. R., 118; Chicago and Northwestern Rwy. Co., and Chicago, Milwaukee and Saint Paul R. R. Co., 104 U. S. R., 680 and 685.)
It does not appear that the appropriations were insufficient to enable the Postmaster-G-eueral to fulfill this contract and all others made by him, if any, upon the same authority, and whether they were so or not was no concern of the claimant, provided the contract in question did not exceed the entire annual appropriation. Upon that point, raised in a former case, the court said, in an opinion by Judge Bancroft Davis, as follows :
“ Next it is said that the contract was void because the annual appropriation had, at the time of the purchase, been covered by other contracts. We held in Shipman’s Case, this term (18 C. Cls. R., 138), that when one contract on its face assumes to provide for the execution of all the work authorized by an appropriation, the contractor is bound to know the amount of the appropriation and cannot recover beyond it; but we have never held that persons contracting with the Covernment for partial service under general appropriations are bound to know the condition of the appropriation account at the Treasury of on the contract, book of the Department. To do so might block the wheels of the Government. The statu tory restrai uts in this respect apply to the official, but they do not affect the rights in this court of the citizen honestly contracting with the Government.” (Rev. Stat., § § 3679, 3732; Dougherty's Case, 18 C. Cls. R., 503.; (R. S., § 5003.)
This disposes of all the matters of defense presented to the court at the argument, and the result is that the demurrer must be overruled. Judgment will be entered for the claimant for the amount claimed, unless the defendants elect to. plead to the petition before the close of this week.
*474 Nott, J., did not sit in this case and took no part in the decision.
Weldon, J., was prevented by illness from sitting in this case and took no part in the decision.