Bruce F. KELLY, Appellant,

v.

GALVESTON COUNTY, Texas, et al., Appellees.

No. 1034.

Court of Civil Appeals of Texas, Houston (14th Dist.).

March 5, 1975.

508

Carl D. Haggard, Haggard & Slack, Houston, for appellant.

Elmo Schwab, Barker, Lain, Smith & Schwab, William D. Decker, Elmo M. Johnson, Decker & Johnson, Galveston, I. Allan Lerner, La Marque, James P. Simpson, Barney L. McCoy, Simpson, Morgan & Burwell, William G. Neumann, Jr., Mabry & Gunn, C. Mann Gregg, Texas City, for appellees.

COULSON, Justice.

This is a summary judgment case.

Appellant, Bruce F. Kelly, as plaintiff, brought suit against the appellees, Galveston County, et al, as defendants. Following the filing of the plaintiff's second amended original petition each of the defendants filed a motion for summary judg-ment. After due notice to all parties, the court heard argument of counsel on each motion for summary judgment, reviewed the affidavits in support thereof, examined the pleadings of parties, and considered the depositions on file. The court thereafter entered its order that each motion for summary judgment be in all things sustained. The plaintiff, Bruce F. Kelly, has perfected this appeal from the final judgment of the trial court that he take nothing.

In his second amended original petition, the plaintiff sought recovery, jointly and severally, against the defendants "Dr. Louis S. Riley, individually and as Director of the Galveston County Mainland Cities Health Department and as Project Director of Galveston County Coordinated Community Clinics; County of Galveston, Galveston, Texas; Galveston County Mainland Cities Health Department; Ray Holbrook, individually and as County Judge of Galveston County, Texas, at all times pertinent herein; Earl Llewellyn, Paul Hopkins, Jack Lawrence and Jimmie Vacek, each individually and as members of Commissioners Court of Galveston County, Texas, at all times pertinent herein; Emmett Lowery, individually and as Mayor of the City of Texas City, Texas, at all times pertinent herein; Gail G. Bradley, individually and as Mayor Pro-Tem of the City of Texas City, Texas, at all times pertinent herein; W. T. Reitmeyer, individually and as Mayor of the City of Hitchcock, Texas, at all times pertinent herein; James Crowder, individually and as Mayor of the City of La Marque, Texas, at all times pertinent herein; Ben Blackledge, individually and as Mayor of the City of Kemah, Texas, at all times pertinent herein; Johnnie Arolfo, individually and as Mayor of the City of League City, Texas, at all times pertinent herein; Ed Stuart, individually and as Mayor Pro-Tem of the City of Friendswood, Texas, at all times pertinent herein; Robert Varnadore, individually and as Vice-President of Dickinson Water Control District No. 1, Dickinson, Texas, at all times pertinent herein;

Guy Wilkinson, Sanitation Department, Galveston County, Texas, at all times pertinent herein; Leah Maes, wife of Joe Maes, Texas City, Texas, and Secretary to the Director of Galveston County Mainland Cities Health Department, Dr. Louis S. Riley, at all times pertinent herein; Texas City Newspapers, Inc., a corporation; Harvey Prichard, individually and as Publisher and Editor of the Texas City Daily Sun, a newspaper published by Texas City Newspapers, Inc.; John Balione, individually and as Managing Editor of the Texas City Daily Sun, a newspaper; Fred Hartman, individually and as President of Texas City Newspapers, Inc., a corporation, and alternatively as Owner of the newspaper identified above as Texas City Daily Sun; Dorothy Johanneson, news reporter and staff writer for the Texas City Daily Sun, individually and in her official corporate capacities; Skip Dinoff, individually and as a news reporter, headline writer and editor or other officer of and for said newspaper Texas City Daily Sun above named; and Rev. Gammon Jarrel, individually and as Chairman of Galveston County Coordinated Community Clinics Advisory Board."

The plaintiff contends that the defendants entered into and engaged in an unlawful conspiracy, and did, by unlawful conduct and means, wrongfully interfere with the contractual rights of the plaintiff, Bruce F. Kelly, as Project Administrator for the Galveston County Coordinated Community Clinics; that the conspiracy was motivated and activated by malice on the part of the defendants toward the plaintiff; and that the defendants knowingly, deliberately, wantonly and with reckless abandon caused the plaintiff to be wrongfully discharged from his office. The plaintiff sought to recover from the defendants, jointly and severally, the sum of $85,876.41 representing the balance of the proceeds which he would have received under his alleged contract, $2,000,000 in exemplary damages, a reasonable sum as attorney's fees, and all costs of court.

It is alleged by the plaintiff that the Galveston County Coordinated Community Clinics is a duly and legally organized and existing agency and activity of Galveston County, Texas, the State of Texas, and the United States Department of Health, Education and Welfare.

Prior to April 24, 1970, Dr. Louis S. Riley was employed by Galveston County, Texas, as Galveston County Health Officer, Director of the Health Department of Galveston County, Project Director of the Air Pollution Control Program, and Project Director of the Galveston County Comprehensive Health Care Program. Dr. Louis S. Riley was Project Director of the Galveston County Coordinated Community Clinics.

On or about April 24, 1970, Dr. Louis S. Riley, as Project Director of the Galveston County Coordinated Community Clinics, entered into an oral contract with the plaintiff, Bruce F. Kelly, employing him as Administrator of the Galveston County Coordinated Community Clinics.

On or about July 20, 1970, the defendant, Guy Wilkinson, who had served for many years as "Chief of Sanitation" within the Galveston County Mainland Cities Health Department, was demoted and relieved of his duties and position by order of the defendant Dr. Louis S. Riley. Immediately thereafter, the plaintiff, Bruce F. Kelly, was appointed "Chief of Sanitation" within the Galveston County Mainland Cities Health Department by Dr. Louis S. Riley.

The events which give rise to this lawsuit occurred between July 20, 1970, when Mr. Wilkinson was demoted from the position of Chief Sanitarian, and November 13, 1970, when Bruce F. Kelly was terminated as Project Administrator for the Galveston County Coordinated Community Clinics.

The Commissioners Court of Galveston County and the Mayors of several of the Mainland Cities in Galveston County took issue with the actions of Dr. Riley in demot-

ing Guy Wilkinson on July 20, 1970. They sought the dismissal of Bruce F. Kelly and the reinstatement of Guy Wilkinson. Several meetings were held during which the Health Department was a central issue. The Texas City Daily Sun, a local newspaper, reported the meetings and published a series of articles relating to the Health Department and the personalities involved.

On August 10, 1970, the plaintiff, Bruce F. Kelly, prepared a written agreement designated as "A Contract of Employment" pursuant to which Bruce F. Kelly was employed to be the Administrator of the Galveston County Coordinated Community Clinics. This contract was signed by Louis S. Riley as Project Director. Although prepared on August 10, 1970, said instrument is back dated to April 24, 1970. It employs Bruce F. Kelly beginning May 1, 1970, for a period of five years at a minimum salary of $17,500 per year, and contains other provisions dictated by the said Bruce F. Kelly.

On August 17, 1970, Ray Holbrook, as County Judge of Galveston County, Texas, delivered a letter to Bruce F. Kelly notifying him that he was being terminated as Administrator of the Galveston County Coordinated Community Clinics. The notice of termination was disregarded by Bruce F. Kelly with the support of Dr. Louis S. Riley.

Thereafter, in September or October of 1970, Dr. Riley was replaced as Director of the Galveston County Health Department by Dr. John Reeves. Dr. Riley remained the Project Director of the Galveston County Coordinated Community Clinics and was instructed by Dr. Reeves to terminate the employment of Bruce F. Kelly as Administrator. Dr. Louis S. Riley offered Bruce F. Kelly the opportunity to resign as Administrator of the Galveston County Coordinated Community Clinic. When Bruce F. Kelly refused to resign, he was terminated at 3:00 P.M. November 13, 1970.

The plaintiff's suit is for tortious interference with a contractual relationship through a conspiracy of the defendants. Among other things the defendants pled, jointly or severally, a general denial, a denial of a conspiracy, a denial of malice, and a denial of knowledge of the contractual relationship. Some of the defendants pled affirmatively that the governmental entities and their officers and employees were protected from suit because of sovereign immunity. The newspaper and its employees pled that they were immune from suit by reason of the first amendment to the United States Constitution.

There are several classes of appellees in this lawsuit. The first class consists of the County of Galveston, public officials, and public employees. All defendants of this class rely upon some form of sovereign immunity as an affirmative defense. The second class consists of the Texas City Daily Sun, its officials, employees and reporters. All of these defendants share a common defense in their alleged rights under the first amendment to the Constitution of the United States. Third, there is a miscellaneous class which asserts no privilege, but denies being a party to any conspiracy to interfere with the contract of the plaintiff Bruce F. Kelly with the Galveston County Coordinated Community Clinics.

■ There is a common problem raised by all defendants in that each moved for summary judgment prior to trial. The plaintiff's second amended original petition asserts a cause of action in tort contending that the defendants entered into a conspiracy to maliciously, wilfully and wantonly interfere with the contract rights of the plaintiff. As movants in a summary judgment proceeding, each defendant had the burden of presenting summary judgment evidence which established as a matter of law the absence of a conspiracy, the absence of malice, and the presence of good faith. Cheatwood v. Jackson, 442 S.W.2d

**512**

789 (Tex.Civ.App.-Houston [14th Dist.]), writ ref'd n.r.e. per curiam, 445 S.W.2d 513 (Tex.Sup.1969); Stockton v. Summers, 504 S.W.2d 637 (Tex.Civ.App.-Houston [14th Dist.] 1974, no writ).

The plaintiff asserts before this Court that he pled no cause of action against the City of Kemah, the City of League City, and the City of La Marque; and that the County of Galveston is the only political subdivision of the State which was made a defendant.

The County of Galveston is a governmental entity, and is generally entitled to the defense of governmental immunity as to tort claims asserted against it. The Texas Tort Claims Act, Vernon's Tex.Rev.Civ.Stat.Ann. art. 6252–19 (1970), deprives the governmental entity of its defense of governmental immunity only to a limited extent. In this case the Act does not deprive the County of Galveston of its defense of a governmental immunity to a tort claim growing out of the alleged conspiracy to interfere with the contract of the plaintiff Bruce F. Kelly. Childs v. Greenville Hospital Authority, 479 S.W.2d 399 (Tex.Civ.App.-Texarkana 1972, writ ref'd n.r.e.).

The plaintiff asserts in his brief that, although not named as defendants, the City of Kemah, the City of League City and the City of La Marque each filed an answer in the trial court; that the City of League City and the City of Kemah filed motions for summary judgment and that the trial court granted a summary judgment to the City of League City. The confusion is created by the plaintiff's second amended original petition wherein the defendants are designated as herein before stated. Good legal practice justified those governmental entities in answering the plaintiff's second amended original petition so as to avoid any default judgment through confusion.

As a matter of law, because of governmental immunity, the plaintiff,

Bruce F. Kelly, has no cause of action against the following defendants: the County of Galveston, the Galveston County Mainland Cities Health Department, Dr. Louis S. Riley as Director of the Galveston County Mainland Cities Health Department, Ray Holbrook as County Judge of Galveston County, Texas, Earl Llewellyn, Paul Hopkins, Jack Lawrence and Jimmie Vacek as members of the Commissioners Court of Galveston County, Texas, Emmett Lowery as Mayor of Texas City, Texas, Gail G. Bradley as Mayor Pro-Tem of the City of Texas City, Texas, the City of Texas City, Texas, W. T. Reitmeyer as Mayor of the City of Hitchcock, Texas, the City of Hitchcock, Texas, James Crowder as Mayor of the City of La Marque, Texas, the City of La Marque, Texas, Ben Blackledge as Mayor of the City of Kemah, Texas, the City of Kemah, Texas, Johnnie Arolfo as Mayor of the City of League City, Texas, the City of League City, Texas, Ed Stuart, as Mayor Pro-Tem of the City of Friendswood, Texas, the City of Friendswood, Texas, Robert Varnadore as Vice-President of Dickinson Water Control District No. 1, the Dickinson Water Control District No. 1, Guy Wilkinson as an employee of the Sanitation Department of Galveston County, Texas, the Sanitation Department of Galveston County, Texas, and Leah Maes as Secretary to the Director of Galveston County Mainlands Cities Health Department. To the extent that each such governmental entity has or may have been designated a defendant in this proceeding, and to the extent that any of the aforenamed defendants may have represented any such governmental entity as a public official or a public employee, the said summary judgment is in all things affirmed. Benson v. Dallas County Flood Control District, 301 S.W.2d 729, 732 (Tex.Civ.App.-Dallas), rev'd on other grounds, 157 Tex. 617, 306 S.W.2d 350 (1957).

The plaintiff's third point of error states that the trial court erred in granting summary judgment to public officials sued as

individuals for an intentional tort unauthorized by the State.

It is the contention of the defendant public officials and public employees that they were operating in their respective official and public capacities and within the proper discretion attendant to their respective offices. By affidavits they deny having personal knowledge of the alleged written contract and its terms. They further deny having been involved in any conspiracy to deprive Kelly of his contract rights and they state that any actions which they have taken were in the interest of serving the needs of their respective constituencies. These defendants also argue that the contract involved was void because it was not drawn, accepted or funded in such a way as to conform to the terms of the Constitution of the State of Texas.

■ The defendants must do more than merely assert that they were acting properly in the conduct of their offices. They cannot be held accountable if they had a legal right to do what they did. Ross v. Gonzales, 29 S.W.2d 437 (Tex. Civ.App.-San Antonio 1930, writ dism'd). However, they can be held personally liable if they have exceeded the legitimate bounds of their office. Borger Independent School District v. Dickson, 52 S.W.2d 505 (Tex.Civ.App.-Amarillo 1932, writ ref'd n.r.e.). The bare assertion by said defendants that they were acting within their legal capacities begs the question as to whether or not they were acting outside of the realm of their authority. The effect of the summary judgment evidence contained in such affidavits is merely assertive of a conclusion and is not sufficient to sustain a motion for summary judgment. Duffard v. City of Corpus Christi, 332 S. W.2d 447 (Tex.Civ.App.-San Antonio 1960, no writ).

■ It is further contended by the defendant public officials and public employees that they had no knowledge of the contract, and therefore, they could not have conspired to interfere with it. It is

not necessary that a defendant in a case of interference with contract rights have actual knowledge of the contract and its terms. It is enough that the defendant had facts from which a reasonable person would conclude the existence of a contract. Tippett v. Hart, 497 S.W.2d 606 (Tex.Civ. App.-Amarillo), writ ref'd n.r.e. per curiam, 501 S.W.2d 874 (Tex.Sup.1973). It can be reasonably inferred from the undisputed fact that Kelly was administrator of the Galveston County Coordinated Community Clinics that he had some form of contractual arrangement. It can be reasonably inferred from the summary judgment evidence that the defendants, who were public officials and public employees, were acting to have Bruce F. Kelly dismissed.

■ The defendants contend that the contract relied upon by Bruce F. Kelly is void for failure to comply with the Constitution of the State of Texas in that it was not ratified by the Commissioners Court as required by Tex.Const. art. V, § 18, Vernon's Ann.St.; that it was not funded in compliance with Tex.Const. art. XI, § 7; and that it seeks to guarantee compensation for services not yet performed in contravention of Tex.Const. art. III, §§ 52, 53. These assertions give rise to questions of fact that are disputed. There is evidence that the Galveston County Coordinated Community Clinics is financially independent of the State of Texas and its subdivisions and that Bruce F. Kelly would be paid entirely from federal funds. The relationship between the federally funded program, the State of Texas, and the County of Galveston is unusual. The terms and conditions of the grant from the United States Department of Health, Education and Welfare for the Galveston County Coordinated Community Clinics were not introduced into evidence and the lines of authority under the grant program are not defined in the record. The court cannot, as a matter of law, conclude that the provisions of the Constitution of the State of Texas are applicable to the Grant Program.

It is contended in several defendants' briefs that the contract is void as being against public policy because it is contrary to 31 U.S.C. § 665 (1954), prohibiting contracts made in advance of appropriations. However, it has long been the rule that a contract will be valid where the contract does not exceed the appropriation which has been made. New York Central and Hudson R.R. v. United States, 21 Ct. Cl. 468 (1886). The total value of the contract executed by Dr. Louis S. Riley, as Projector Director of the Galveston County Coordinated Community Clinics, with Bruce F. Kelly, as administrator, is less than the $200,000 which had been received by the Grant Program as startup money.

Further, several defendants urge that the contract should be held void because it attempts to establish venue and seeks to oust the jurisdiction of the court in establishing damages. It is argued that this makes the contract contrary to public policy and therefore outside the rule of Clements v. Withers, 437 S.W.2d 818 (Tex.Sup.1969). The *Clements* case held that mere unenforcibility of a contract is not a defense to an action for malicious interference with contract rights. The court specified that the case was not one wherein public policy opposed the performance. The contract between Kelly and the Galveston County Coordinated Community Clinics does not "oust" the jurisdiction of the court. The contract provides for service of process in Galveston County and sets out what appears to be a liquidated damage clause. Neither of these is ground for declaring the contract contrary to public policy.

The plaintiff, Bruce F. Kelly, in his second amended original petition, named as defendants Texas City Daily Sun, a newspaper, its corporate owner, its editor and publisher, and several members of the editorial and reporting staff. He alleged that they conspired with the other defendants to interfere with his contract with the Galveston County Coordinated Community Clinics. The plaintiff did not allege libel, but seeks to show that these defendants conspired with others to do him harm. It is the plaintiff's contention that the newspaper articles published by these defendants contained untruths and inflamed rhetoric designed to fan the sparks of conspiracy which led to his termination as administrator of the Galveston County Coordinated Community Clinics.

In support of their motion for summary judgment, these newspaper defendants submitted an affidavit of the president of the corporation which owns the newspaper, together with answers made by Bruce F. Kelly to written interrogatories, and copies of the articles which were cited by Bruce F. Kelly as evidence of the alleged conspiracy. It was the burden of these defendants, upon the hearing of their motions for summary judgment, to show as a matter of law that there did not exist any question of fact necessary to the resolution of the case insofar as they may have been concerned. In making its decision on a motion for summary judgment, the trial court must assume to be true the evidence of the party opposing the motion for summary judgment. These principles have been explained by this Court as creating a negative burden of proof of the defendant-movant for a summary judgment to show the absence of those elements of the cause of action which are critical to the plaintiff's case. Cheatwood v. Jackson, *supra*, 442 S.W.2d at 793.

In their brief, the newspaper defendants rely heavily upon the first amendment of the United States Constitution and the decision of the United States Supreme Court in New York Times Company v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L. Ed.2d 686 (1964). They contend that the principles governing suits for libel should apply to this case which alleges tortious interference with contract rights. It is not necessary for this Court to deal directly with that contention. The critical element which must be shown by a plaintiff under

*New York Times* is malice or knowing disregard for the truth. In the case at hand, Bruce F. Kelly in order to prevail upon a trial on the merits must show a malicious, or intentional conspiracy to interfere with his contract rights. However, this burden will be his as plaintiff at the trial on the merits, and not at the hearing on the motions for summary judgment made by the defendants. Even if this case had fit directly into the mold of the *New York Times* case, it would not fall upon Bruce F. Kelly, the plaintiff, to prove his case prior to trial upon the hearing of the defendants' motion for summary judgment.

■ Insofar as the newspaper defendants are concerned, the only question raised by this appeal is whether or not the newspaper defendants successfully met the burden of proof imposed upon them by their motion for summary judgment. The summary judgment evidence presented by the newspaper defendants does not meet the standards which this Court set out in Cheatwood v. Jackson, *supra*, and which have been alluded to several times in this opinion. The issue of the absence of malice is not addressed by their affidavit, nor is the possibility of malice dispelled by the newspaper articles submitted as evidence. For this reason, the summary judgment for this class of newspaper defendants cannot be sustained.

The final class of defendants consists of Guy Wilkinson, Rev. Gammon Jarrel, and Leah Maes. None of these individuals were sued in any official capacity. Their motions for summary judgment were supported only by affidavits which asserted their non-participation in any conspiracy to thwart the plaintiff's alleged contract with the Galveston County Coordinated Community Clinics.

■ Their motions for summary judgment cannot be sustained. These defendants have not, by their summary judgment evidence, proved as a matter of law that they did not participate in the conspiracy alleged by Bruce F. Kelly. The nega-

tive burden of proof imposed on these defendants in supporting their motions for summary judgment is very difficult to meet. However, it is necessary to set such a standard if the rights of parties to a trial under due process are to be preserved. The parties to a controversy are entitled to the resolution of fact questions in a trial under the adversary procedure. Such questions of fact are not to be resolved by affidavits which do not dispose of the rights of the parties as a matter of law. A summary judgment proceeding is not designed to weigh the credibility of witnesses. Therefore, a mere swearing match between parties as reflected by their conflicting affidavits will not be sufficient to sustain a motion for summary judgment.

■ It should be noted that, at the time of trial on the merits of this proceeding, the burden of proof will rest upon the plaintiff to prove the elements of his case for civil conspiracy. In a conspiracy case these principles work a hardship on the party bearing the burden of proof. In the case before this Court, when a defendant moved for summary judgment, that defendant had to show to a legal certainty that such defendant was not involved in the alleged conspiracy. At the trial, the plaintiff must show from a preponderance of the evidence that the defendants knowingly and wilfully conspired either in accomplishing an unlawful purpose, or in unlawfully accomplishing a lawful purpose to the damage and detriment of the plaintiff. Schlumberger Well Surveying Corp. v. Nortex Oil and Gas Corp., 435 S.W.2d 854, 856 (Tex.Sup.1968). The difficulty inherent in proving these propositions serves to prevent frivolous conspiracy actions.

The judgment of the trial court is affirmed as to the County of Galveston, and the public officials and public employees in their official capacities. The judgment of the trial court is reversed, and as reversed is severed and remanded for trial as to the following defendants in their individual capacities: Dr. Louis S. Riley, Ray Holbrook, Earl Llewellyn, Paul Hopkins, Jack

Lawrence, Jimmie Vacek, Emmett Lowery, Gail G. Bradley, W. T. Reitmeyer, James Crowder, Ben Blackledge, Johnnie Arolfo, Ed Stuart, Robert Varnadore, Guy Wilkinson, Leah Maes, Harvey Prichard, John Balione, Fred Hartman, Dorothy Johanneson, Skip Dinoff, the Texas City Daily Sun, Texas City Newspapers, Inc., and Rev. Gammon Jarrel.