

# THE ATTORNEY GENERAL
## OF TEXAS

May 23, 1988

**JIM MATTOX**
**ATTORNEY GENERAL**

Honorable Stephen C. Howard      Opinion No.   JM-908
Orange County Attorney
Orange County Courthouse         Re:  Whether a county may enter
Orange, Texas  77630             into a binding agreement for
                                 solid waste disposal  services,
                                 and related questions (RQ-1045)

Dear Mr. Howard:

You inform us that Orange County intends to establish a solid waste disposal system in which solid waste would be burned and the energy produced would be sold. The county would buy solid waste from municipalities within the county and would sell its own solid waste, along with the municipalities' solid waste, to a privately-owned incinerator, which would burn the solid waste to produce steam or electrical power. The contracts between the municipal governments and the county would last as long as 20 years. You ask five questions regarding the county's authority to enter into such contracts:

> Question 1: Can [a] Commissioners Court enter into a solid waste disposal service agreement with an individual or corporation which will bind future Commissioners Courts?

> Question 2: Can the County enter into a solid waste disposal contract which would require the County to pay a penalty if a quantity of solid waste is not provided by the County to an individual or corporation within a given period of time?

> Question 3: Can the County enforce a solid waste disposal contract against cities which would bind the cities for up to 20 years? Under what conditions is such a contract valid where a home rule city charter restricts the duration of a city contract?

Question 4: Is a solid waste disposal contract in which the County provides solid waste disposal services to cities and charges the cities on a cost-plus a percentage basis valid?

Question 5: Can the County enter into a solid waste disposal contract with an individual or corporation without going out for bids?

Your questions impliedly ask whether the county has statutory authority to enter into any such contract in the first place. You also ask whether any such contract may be binding. We note at the outset that we here do not construe any specific contract; we limit this opinion to a general discussion of any relevant statutes authorizing such contracts. Nor do we address any issues regarding the payment for any services under any such long-term contracts and what constitutes the incurring of "debt" for purposes of article XI, section 7, of the Texas Constitution. You do not raise any constitutional problems related to these issues, and accordingly, we do not consider them. We will answer each of your questions in turn.

You first ask whether a commissioners court may enter into a solid waste disposal service agreement with an individual or corporation that will bind future commissioners courts. The general rules adopted by a majority of jurisdictions that have addressed the issue of the authority of a governing body to enter into a contract extending beyond the body's terms are set forth in Annot., 70 A.L.R. 794 (1931), 149 A.L.R. 336 (1944). Boards or governing bodies have two classes of powers -- governmental (or legislative) and proprietary (or business). In the exercise of its governmental or legislative powers, a board or governing body, <u>in the absence of specific statutory provisions to the contrary</u>, cannot enter into a contract extending beyond its own term. But in an instance in which the governing body is exercising its proprietary (or business) power, it may contract as an individual, unless it is restrained by statutory provisions to the contrary.

An exception to the majority rule occurs where the contract for services is not for services to be performed during a particular period, but for the rendering of a particular and specified act the performance of which may extend beyond the terms of the members of the governing body making the contract. Such a contract is valid. The rule adopted in a minority of jurisdictions that have addressed the issue is that contracts, even those regarding matters

governmental (or legislative), may extend beyond the terms of the boards or governing bodies that execute them. Texas adopts the majority rule. See, e.g., Gulf Bitulithic Co. v. Nueces County, 11 S.W.2d 305 (Tex. Comm'n App. 1928, judgm't adopted); J. N. McCammon, Inc. v. Stephens County, 127 Tex. 49, 89 S.W.2d 984 (Tex. Comm'n App. 1936, opinion adopted); Gillam v. City of Ft. Worth, 287 S.W.2d 494 (Tex. Civ. App. - Ft. Worth 1956, writ ref'd n.r.e.).[1] Therefore, we first must determine whether the county has specific statutory authority to enter into the sort of contract about which you inquire.

Texas has enacted a series of statutes intended both to enforce a state-wide comprehensive scheme of sanitation and health regulation and to facilitate state and local cooperation in dealing with matters of public health. See V.T.C.S. articles 4477-7 -- 7f, et seq. Article 4477-7a, V.T.C.S., the Solid Waste Resource Recovery Financing Act, authorizes any "issuer" to "acquire, construct, and improve or cause to be acquired, constructed, and improved solid waste resource recovery systems," as defined by the act, as well as to acquire real property. V.T.C.S. art. 4477-7a, §4(a). "Issuer" is defined as

---

1. We note that both the Annotation and Texas Jurisprudence construe the Texas cases as enunciating the rule adopted in a minority of jurisdictions, i.e. that governing bodies are empowered to contract beyond the terms their members. See 47 Tex. Jur. 2d Public Officers §120 at 158 (1963); 40 Tex. Jur. 2d, Municipal Corporations §434 at 200 (1976). We conclude that the above-cited cases do not stand for the proposition that governing bodies simply can contract beyond their terms of office. We conclude that a close reading of the Gulf Bitulithic cases, both in the Court of Civil Appeals and the Commission of Appeals, and the McCammon case, will demonstrate that Texas in fact does not adopt the minority rule, but rather it adopts the majority-adopted exception to the majority rule. The Gulf Bitulithic and McCammon cases set forth the rule that, where a contract for services is not for services to be rendered during a particular period, but rather for the doing of a particular and specified act the performance of which may extend beyond the terms of the members of the governing body making the contract, such contract is valid.

> any district or authority created and
> existing under Article XVI, Section 59, or
> Article III, Section 52, of the Texas
> Constitution which is now or hereafter
> authorized [by any law] to own a waste
> disposal system and which includes within its
> boundaries at least one county.

V.T.C.S. art. 4477-7a, §3(3).

Subsection 10 (a) of the act is the section upon which you rely in support of your argument that the county may enter into the sort of long-term contract about which you inquire:

> All public agencies are authorized to
> enter into contracts with any person for the
> supply of solid waste, including contracts
> for the collection and transportation of
> solid waste, for disposal at any solid waste
> resource recovery system and may covenant and
> agree in such contracts to supply minimum
> quantities of solid waste and to pay minimum
> fees and charges for the right to have solid
> waste disposed of at such solid waste
> resource recovery system during the term of
> such contracts. Any such contract may con-
> tinue in effect for such term of years as the
> governing body of the public agency shall
> determine is desirable.

V.T.C.S. art. 4477-7a, §10(a). The act defines "public agency" to mean:

> any district or authority heretofore or
> hereafter created and existing under Article
> XVI, Section 59, as amended, or Article III,
> Section 52, as amended, of the Constitution
> of Texas which includes within its boundaries
> all of at least one county, any incorporated
> city or town in the state, whether operating
> under general law or under its home-rule
> charter, <u>or any other political subdivision
> or agency of the state having the power to
> own and operate solid waste collection,
> transportation, or disposal facilities or
> systems.</u> (Emphasis added.)

V.T.C.S. art. 4477-7a, §3(5). Article 4477-8, V.T.C.S., the County Solid Waste Control Act, provides at section 4 that

counties themselves may operate solid waste disposal systems:

> A county may acquire, construct, improve, enlarge, extend, repair, operate, or maintain all or any part of one or more solid waste disposal systems, and may make contracts with any person under which the county will collect, transport, handle, store, or dispose of solid waste for any such person. A county may also enter into contracts with any person to purchase or sell, by installments over such term as may be deemed desirable, or otherwise, all or any part of any solid waste disposal system. A county is also authorized to enter into operating agreements with any person, for such terms and upon such conditions as may be deemed desirable, for the operation of all or any part of any solid waste disposal system by any person or by the county; and a county may lease to or from any person, for such term and upon such conditions as may be deemed desirable, all or any part of any solid waste disposal system.

V.T.C.S. art. 4477-8, §4. Therefore, a county is a "public agency" for purposes of article 4477-7a and is authorized to enter into the sort of long-term contract for the supply of solid waste about which you ask. See, e.g., City of Big Spring v. Board of Control, 404 S.W.2d 810 (Tex. 1966). We note that the sort of contract that you contemplate does not appear to be one between a county and an "issuer" as defined by the act. But section 10 of the act by its terms does not limit contracts for the supply of solid waste to contracts with "issuers"; rather, it permits any "public agency" to enter into a solid waste supply contract with "any person." Section 3(4) of the act defines person to mean "any individual, public agency as defined herein, public or private corporation, political subdivision or governmental agency of the United States of America or the state, copartnership, association, firm, trust, estate, or any other entity whatsoever." V.T.C.S. art. 4477-7a, §3(4). See also article 4477-7c, V.T.C.S., the Comprehensive Municipal Solid Waste Management Resource Recovery and Conservation Act, section 14. Accordingly, we conclude that a county does have statutory authority to enter into the sort of long-term contract that you describe. See Browning-Ferris, Inc. v. City of Leon Valley, 590 S.W.2d 729 (Tex. Civ. App. - San Antonio 1979, writ ref'd n.r.e.).

You next ask whether a county may enter into a solid waste disposal contract that would require the county to pay a penalty if a specified quantity of solid waste is not provided within a certain period of time by the county to the person or corporation with whom it has contracted. Article 4477-7a, V.T.C.S., the Solid Waste Resource Recovery Financing Act, provides at subsection 10 (a):

> All public agencies are authorized to enter into contracts with any person for the supply of solid waste, including contracts for the collection and transportation of solid waste, for disposal at any solid waste resource recovery system <u>and may covenant and agree in such contracts to supply minimum quantities of solid waste</u> and to pay minimum fees and charges for the right to have solid waste disposed of at such solid waste resource recovery system during the term of such contracts. Any such contract may continue in effect for such term of years as the governing body of the public agency shall determine is desirable. (Emphasis added.)

V.T.C.S. art. 4477-7a, §10(a).

The act clearly permits any contract that provides for the supply of solid waste to contain a clause specifying that the supplier of solid waste supply a minimum amount. But the act does not by its terms permit the inclusion of a penalty clause for failure to supply the minimum stated amount. You assert that a county may not agree to indemnify a person or corporation against risks, citing <u>Galveston, H. & S.A. Ry. Co. v. Uvalde County</u>, 167 S.W.2d 305 (Tex. Civ. App. - San Antonio 1942, writ ref'd w.o.m.), but you disagree that such a provision should be considered an indemnity clause. We do not here discuss the circumstances under which a county may enter into a contract containing an "indemnity clause."[2] We do agree with you, though, that on

---

2. We do note, though, that the Texas Supreme Court has held that article XI, sections 5 and 7, of the Texas Constitution, which we will discuss later in connection with your fourth question, do not prevent a county from agreeing to enter into a contract containing an indemnity clause providing that the county "hold and save harmless" the United States from damages that may result from the construction of a bridge. <u>Brown v. Jefferson County</u>, 406 S.W.2d 185 (Tex. 1966); <u>see also</u> <u>County of Ector v. City of Odessa</u>, 492 S.W.2d 360 (Tex. Civ. App. - El Paso 1973, no writ).

the basis of the information that you have furnished us, the sort of clause that you describe fairly could not be denominated an "indemnity clause."

A "contract for indemnity" is an undertaking by which the promisor (indemnitor) agrees to make good any loss or damage the promisee (indemnitee) has incurred, or to safeguard the indemnitee against liability. See generally Attorney General Opinion MW-475 (1982); 14 Tex. Jur. 3d Contribution and Indemnification §§15 - 28 at 35 (1981); Reynolds, Contracts of Indemnity in Texas, 43 Tex. B. J. 297 (1980). The right of "indemnity" rests upon the difference between primary and secondary liability of two persons, each of whom is made responsible by law to an injured party. The right inures to the person compelled, because of some legal obligation other than active fault, to pay damages occasioned by another's initial negligence, for which such person is only secondarily liable. Muldowney v. Middleman, 107 A.2d 173 (Pa. 1954); Builders Supply Co. v. McCabe, 77 A.2d 368 (Pa. 1951). The Texas Supreme Court has defined "indemnity" to mean "the payment of all of plaintiff's damage by one tortfeasor to another tortfeasor who has paid it to the plaintiff." General Motors Corp. v. Simmons, 558 S.W.2d 855, 859 (Tex. 1977), overruled on other grounds, 665 S.W.2d 427 (Tex. 1984); see also Hodges, Contribution and Indemnity Among Tortfeasors, 26 Tex. L. Rev. 150, 151 (1947). "Indemnity" results in the shifting of the entire burden of loss from one tortfeasor to another. International Harvester Co. v. Zavala, 623 S.W.2d 699 (Tex. Civ. App. - Houston [1st Dist.] 1981, writ ref'd n.r.e.)

We note, again, that we here do not construe any specific contract provision; any penalty provision must be viewed in the context of the contract taken as a whole. Our opinion, then, is limited to a more general discussion of a county's authority in this area. On the basis of the information that you have furnished us, we agree with your construction of the penalty provision; we do not think that such a clause fairly can be denominated as an indemnity clause. If the clause more properly could be denominated as a liquidated damages clause, providing for specified damages in the event that the county breaches its agreement, it would be permissible. See Kelly v. Galveston County, 520 S.W.2d 507 (Tex. Civ. App. - Houston [14th Dist.] 1975, no writ) (inclusion of what appears to be liquidated damages clause in contract of employment is not contrary to public

policy).[3] We conclude that the county may enter into a contract containing the sort of clause that you describe, but only if the penalty imposed is a measure of any damages actually incurred by the contracting party; if the penalty bears no relationship to the actual damages sustained or if it is not part of a _quid pro quo_ for which the county legitimately may bargain, we conclude that it will constitute a gratuity, the grant of which violates article III, section 52, of the Texas Constitution.

You next ask whether the county may enforce a solid waste disposal contract against cities when the contract would bind the cities for up to 20 years and whether such a contract would be valid in an instance in which a home rule city charter restricts the duration of any city contract. With the first part of your question, you are really asking whether a city may enter into the sort of long-term contract that the county contemplates entering.

Article 4477-7c V.T.C.S., the Comprehensive Municipal Solid Waste Management, Resource Recovery, and Conservation Act, provides at section 14:

> (a) A public agency may enter into contracts to enable it to furnish or receive solid waste management services. Each contract may be for the time and under the

---

3. "Liquidated damages" constitute the measure of damages agreed to in advance by the parties as just compensation for a breach of contract, typically in an instance in which the harm caused by the breach is incapable or very difficult of an accurate estimation. _Sisk v. Parker_, 469 S.W.2d 727 (Tex. Civ. App. - Amarillo 1971, writ ref'd n.r.e.); _City of Amarillo v. Hume_, 70 S.W.2d 651 (Tex. Civ. App. - Amarillo 1934), _aff'd_ 128 Tex. 596, 99 S.W.2d 887 (Tex. Comm'n App. 1937). Parties to a contract have the legal right to stipulate the amount of damages that may be recoverable in actions for breach of the contract; on a showing that the stipulated sum fairly was estimated by the parties and that it was their intention that that sum be in lieu of all other damages, the agreement is binding on the parties and furnishes the measure of damages. _A.J. Rife Construction Co. v. Brans_, 298 S.W.2d 254 (Tex. Civ. App. - Dallas 1956, writ ref'd n.r.e.); _Elliott v. Henck_, 223 S.W.2d 292 (Tex. Civ. App. - Galveston 1949, writ ref'd n.r.e.).

terms considered appropriate by the governing body of the public agency. <u>A home-rule city's charter provision restricting the duration of a city contract does not apply to a city contract that relates to solid waste management services.</u>

(b) Under a solid waste management service contract, a public agency may:

. . . .

(6) contract with another public agency or other persons for solid waste management services, including contracts for the collection and transportation of solid waste and for processing or disposal at any per-mitted solid waste management facility, including a resource recovery facility, provided the contract may specify the minimum quantity and quality of solid waste to be provided by the public agency and the minimum fees and charges to be paid by the public agency for the right to have solid waste processed or disposed of at the solid waste management facility;

(7) contract with any person or other public agency to supply materials, fuel, or energy resulting from the operation of a resource recovery facility; and

(8) contract with any person or other public agency to receive or purchase solid waste, materials, fuel, or energy recovered from resource recovery facilities. (Emphasis added.)

V.T.C.S. art. 4477-7c, §14. The act at section 6(18) defines "public agency" to mean

a city, county, or a district or authority created and operating under either Article III, Section 52(b)(1) or (2) or Article XVI, Section 59, of the Texas Constitution, or a combination or two or more of these govern-mental entities acting under an interlocal agreement and having the authority under this Act or other laws to own and operate a solid waste management system.

V.T.C.S. art. 4477-7c, §6(18).  The act defines at  section 6(24) "solid waste management" as:

>    the systematic control of  any or all of  the following activities:
>
>    (A) generation;
>    (B) source separation;
>    (C) collection;
>    (D) handling;
>    (E) storage;
>    (F) transportation;
>    (G) processing;
>    (H) treatment;
>    (I) resource recovery; or
>    (J) disposal of solid waste.

V.T.C.S. art. 4477-7c, §6(24).  Because a city is a  "public agency" for purposes of the act and because the  collection, handling, storage,  etc., of  solid waste  falls within  the definition of "solid waste management," a city is authorized by the terms  of the  act to enter  such a  contract as  you describe.  And the language of subsection 14(a) of the  act, underscored above, provides that any home rule city  charter provision restricting the duration  of a city contract  does not apply to  a city  contract that relates  to solid  waste management services.  See Tex. Const. art. XI, §5.

However,  in the  brief accompanying your  request letter, you  express concern  about  the effect  of  article 4477-7d, V.T.C.S., which states:

>    A  home-rule   city's  charter   provision restricting the duration  of a city  contract does not apply to a city contract:
>
>    (1)   that  relates   to  solid   waste management; and
>
>    (2) that must  be for a  longer term  than the charter permits in order for the city  to qualify for  the  receipt  of  federal  funds designated   for   solid   waste   management purposes.

This  provision appears   to  conflict  with   article 4477-7c, V.T.C.S., and  to limit  the instances  in which  a contract may be for a longer  term than that permitted by  a home rule  city  charter provision  to  those in  which  the contract must be for a longer  term in order to qualify  for

the receipt of federal funds. You suggest that, because article 4477-7d fails to define "solid waste management," article 4477-7c controls all contracts relating to solid waste management as defined in that act. In all other instances, article 4477-7d controls. Because each of the statutes in the article 4477-7 series defines "solid waste management" or "management" in substantially identical terms, we disagree with your argument. Instead, we conclude that the provisions of subsection 14(a) of article 4477-7c, V.T.C.S., prevail over article 4477-7d, V.T.C.S. in all instances; consequently, article 4477-7c, V.T.C.S., prevails over any home rule city charter provision that limits the duration of any contract that the home rule city may enter regarding solid waste management.

In an instance in which conflicting statutes are enacted by the same session of the legislature, the latest expression of legislative intent prevails. Ex parte de Jesus de la O., 227 S.W.2d 212 (Tex. Crim. App. 1950); Attorney General Opinions MW-139 (1980); H-1115 (1978). Sutherland on Statutory Construction offers the following rules:

> In the absence of an irreconcilable conflict between two acts of the same session, each will be construed to operate within the limits of its own terms in a manner not to conflict with the other. However, when two acts of the same session cannot be harmonized or reconciled, that statute which is the latest enactment will operate to repeal a prior statute of the same session to the extent of any conflict in their terms.
>
> Because the latest expression of the legislative will prevails, the statute last passed will prevail over a statute passed prior to it, irrespective of the time of taking effect. Where the two acts of the same session take effect at the same time, the latest passed will prevail. (Footnotes omitted.)

Singer, Sutherland on Statutory Construction, §23.17 (4th ed.)

In this instance, both provisions were enacted during the 68th legislature, and both deal with the same subject matter. The two provisions are in irreconcilable conflict. V.T.C.S. article 4477-7c, section 14(a), permits a home rule

city to enter into any contract regarding solid waste management whose duration is longer than that permitted in the home city's charter; article 4477-7d, V.T.C.S., on the other hand, permits a home rule city to enter such a long term contract regarding solid waste management, but only in an instance in which the city must do so in order to qualify for the receipt of federal funds. Article 4477-7d, V.T.C.S., passed the House of Representatives on April 14, 1983 and passed the Senate on May 23, 1983. Article 4477-7c, V.T.C.S., passed the House of Representatives on May 13, 1983. The house then concurred in the Senate amendments to the bill on May 30, 1983; the Senate passed the amended bill on May 30, 1983. Article 4477-7d, V.T.C.S., became law without the Governor's signature on June 19, 1983; article 4477-7c, V.T.C.S., was signed by the Governor the same day. Article 4477-7d, V.T.C.S., became effective on August 29, 1983; article 4477-7c, V.T.C.S., on September 1, 1983.

Article 4477-7c, V.T.C.S., the Comprehensive Municipal Solid Waste Management, Resource Recovery, and Conservation Act, was the last enacted statute, and therefore represents the most recent expression of legislative intent on the subject. Accordingly, the provisions of subsection 14(a) of article 4477-7c, V.T.C.S., which permits a home rule city to enter into any contract regarding solid waste management for the time and under the conditions that it considers appropriate, prevail over a home rule city charter provision that limits the duration of a contract that the home rule city may enter.

You next ask whether any contract entered into by the county with a city that provides that the county provide solid waste disposal services to the city may charge the city on a so-called "cost-plus" basis. Subsection 14(a) of article 4477-7c, V.T.C.S., provides that a public agency as defined by the act may enter into contracts to enable it to furnish or receive solid waste management services. It also provides: "Each contract may be for the time and under the terms considered appropriate by the governing body of the public agency." V.T.C.S. art. 4477-7c, §14(a). You assert that this sentence from subsection 14(a) authorizes a county and a city to enter into such "cost-plus" contracts.

A "cost-plus" contract or a "cost-plus-fixed-fee" contract is one in which the contractor is to be reimbursed for costs of materials and labor by the owner and is to receive a stated percentage of such costs as his profit. Burditt v. Sisk, 710 S.W.2d 114 (Tex. App. - Corpus Christi 1986, no writ); Gay v. Stratton, 559 S.W.2d 131 (Tex. Civ. App. -

Texarkana 1977, writ ref'd n.r.e.). The consideration due under a "cost-plus" contract cannot be ascertained other than by relation to costs expended or necessary to be expended. Fair v. Uhr, 310 S.W.2d 125 (Tex. Civ. App. - Ft. Worth 1958, writ ref'd n.r.e.).

It has been suggested that such a contract might violate article XI, sections 5 and 7, of the Texas Constitution, which forbid both cities and counties from incurring debt for any purpose in any manner unless provision is made, at the time such debt is incurred, for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent as a sinking fund. These constitutional provisions have been construed by the courts to include any pecuniary obligation imposed by contract, except such as was, at the time of the agreement, within the lawful and reasonable contemplation of the parties, to be satisfied out of current revenues for the year or out of some fund then within the immediate control of the city or county. See Brown v. Jefferson County, 406 S.W.2d 185 (Tex. 1966); T. & N.O. R.R. Co. v. Galveston County, 141 Tex. 34, 169 S.W.2d 713 (Tex. Comm'n. App. 1943, opinion adopted); City of Houston v. West, 563 S.W.2d 680 (Tex. Civ. App. - Waco 1978, writ ref'd n.r.e.). It has been suggested that a "cost-plus" or a "cost-plus-fixed-fee" contract would impose upon the contracting city a "debt" for purposes of these constitutional provisions that could be unlimited, or at least unascertainable, and would not permit a city to provide for the levying and collecting of a sufficient tax to discharge the debt.

We have found no Texas case specifically on point. However, a similar argument was made challenging a contract that contained an indemnity clause, providing that Jefferson County would "hold and save harmless" the United States from damages that might result from the construction of a bridge; the Texas Supreme Court upheld the validity of the contract. Brown v. Jefferson County, 406 S.W.2d 185 (Tex. 1966) [hereinafter Brown]. The contract in Brown was challenged on the ground that the obligation incurred was unlimited, while the taxing power of the county was limited by article VIII, section 9, of the Texas Constitution. It was suggested that the county could not then meet the constitutional requirements of article XI, section 7. In other words, it was argued that, because there was a possibility that an obligation due the United States might arise in the future under the indemnity clause of the contract that might be beyond the ability of the county to pay because of the constitutional restrictions of its taxing power, the contract was invalid. The court disagreed:

The 'hold and save' agreement herein involved
will not necessarily result in the assertion
of a claim against the County. If a claim be
asserted, it may be one that could be settled
from the current revenues of a particular
year, or it may be one which may be funded
and paid off without violating any constitu-
tional debt limit or taxing restrictions
applicable to counties. If such obligation
may be so discharged, the County has bound
itself to do so. It has, if necessary, bound
itself to levy a 'sufficient tax.' There
remains only the possibility that an obliga-
tion may arise under the indemnity contract
which the County could not fund and discharge
because of the taxing restrictions contained
in Article [VIII], [section 9] of the Consti-
tution [placing a ceiling on the tax rates
that a county may impose]. Necessarily, the
agreement to levy a 'sufficient tax' from
year to year is subject to constitutionally
imposed restrictions upon the taxing power
and when the levy of a 'sufficient tax' for
any particular year would exceed the tax
limit, no county could be forced to levy a
tax in excess of the constitutional limit.
The outside possibility that this latter
situation might arise will not operate to
invalidate the 'hold and save' agreement.
There is always the possibility that a
municipal taxing organization will incur
obligations that may exceed its permissible
taxing power in future years. [Citations
omitted.] However, legitimate county
contracts should not be declared void upon
possibilities. When the order or resolution
creating the obligation complies with the
provisions of article [XI], [section] 7 of
the Constitution, it should be stricken down
only when it is made to appear that the
limited tax resources of the municipality are
insufficient at such time to discharge the
obligation. (Citations and Footnotes
omitted.)

Id. at 189-90. Article XI, section 5, of the Texas Consti-
tution contains the same sort of constitutional limitation
on the taxing power of home rule cities that is contained in
article VIII, section 9, which limits the taxing power of
counties:

> [S]aid cities may levy, assess and collect
> such taxes as may be authorized by law or by
> their charters; but no tax for any purpose
> shall ever be lawful for any year, which
> shall exceed two and one-half per cent of the
> taxable property of such city. . . .

Tex. Const. art. XI, §5. Accordingly, we conclude that if the formal action taken by the city creating the obligation complies with the provisions of article XI, section 7, the contract should be struck down only in an instance in which the limited tax resources of the city are insufficient at that time to discharge the obligation. We conclude that a "cost-plus" or "cost-plus-fixed-fee" contract is permissible.

With your last question, you ask whether the county may enter into a solid waste disposal services contract with an individual or corporation without awarding the contract on the basis of competitive bidding. We conclude that competitive bidding is not required in such an instance, if entering into the contract is necessary to preserve or protect the public health of the citizens of the county. Whether such is the case in Orange County is a factual matter, the finding of which does not fall within the ambit of the opinion process.

Subchapter C of chapter 262 of the Local Government Code previously codified as article 2368a.5, V.T.C.S., governs competitive bidding. Section 262.023 of the Local Government Code provides:

> (a) Before a county may purchase one or
> more items under a contract that will require
> an expenditure exceeding $5,000, the
> commissioners court of the county must comply
> with the competitive bidding or competitive
> proposal procedures prescribed by this
> subchapter. All bids or proposals must be
> sealed.

> (b) The competitive bidding and competi-
> tive proposal requirements established by
> Subsection (a) apply only to contracts for
> which payment will be made from current funds
> or bond funds or through time warrants.
> However, contracts for which payments will be
> made through certificates of obligation are
> governed by The Certificate of Obligation Act
> of 1971 (Subchapter C, Chapter 271).

> (c) In applying the competitive bidding and competitive proposal requirements established by Subsection (a), all separate, sequential, or component purchases of items ordered or purchased, with the intent of avoiding the competitive bidding and competitive proposal requirements of this subchapter, from the same supplier by the same county officer, department, or institution are treated as if they are part of a single purchase and of a single contract.

Section 262.024 of the Local Government Code sets out the exemptions to the reach of the competitive bidding requirements and provides the following:

> (a) A contract for the purchase of any of the following items is exempt from the requirement established by Section 262.023 if the commissioners court by order grants the exemption:
>
> . . .
>
> (2) an item necessary to preserve or protect the public health or safety of the residents of the county;
>
> . . .
>
> (4) a personal or professional service;
>
> . . .

You do not specify in your request letter just exactly for what the county intends to contract. Under subsection 14(b) of article 4477-7c, V.T.C.S., a "solid waste management services contract" may include both "items," in the common understanding of "physical objects," as well as services. Nor have you indicated whether the commissioners court has voted pursuant to subsection (a) of section 262.024 to grant the exemptions set forth in subsection (b) of that section. Nor have you indicated the amount of money to be expended on the contract. You suggest that the contract falls within exemption (2) of subsection (b), and, on the basis of <u>Browning-Ferris, Inc. v. City of Leon Valley</u>, 590 S.W.2d 729 (Tex. Civ. App. - San Antonio 1979, writ ref'd n.r.e.), no competitive bidding is required.

In Browning-Ferris, a city granted, by ordinance, an exclusive franchise to a garbage collection agency to provide all garbage collection within the city. The contract was awarded without the city going through the competitive bidding process. Quoting the "public health" provisions of the predecessor statute to chapter 262 of the Local Government Code, the court concluded that the award was necessary to preserve and protect the public health and that competitive bidding was not required. The court relied on an earlier case that construed the predecessor statute to article 2368a.5, V.T.C.S., Hoffman v. City of Mount Pleasant, 126 Tex. 632, 89 S.W.2d 193 (Tex. Comm'n App. 1936), and concluded that a county properly could expend funds to protect the public health without the necessity of requiring competitive bids otherwise required by the competitive bidding provisions and that the public health exception to the competitive bidding provisions was operative at all times whether or not there was a "case of public calamity." The public health exception contained in the predecessor statute to article 2368a.5, V.T.C.S., substantially tracks the exception now found in chapter 262.

The Hoffman court declared at 89 S.W.2d 194:

> The matter is one purely of statutory construction. After careful consideration of the whole act as well as the peculiar language of the exception, in light of the rules usually applicable when statutes concerning public health are involved, we have reached the conclusion that the use of the word 'when' clearly indicated the introduction of a new condition and exception not dependent upon a 'public calamity,' and that the requirement of competitive bids with publication of notice of letting the contract is dispensed with when such exception exists. In other words, we are of the opinion that 'when it is necessary to preserve or protect the public health of the citizens of a county or city,' a condition requiring prompt and unrestrained action in order to remedy such a situation exists, regardless of whether such condition has been brought about by a public calamity or in some other way. The words 'preserve' and 'protect,' as applied to public health, carry the idea of timely, efficient, and effective action which keeps intact and unimpaired the good health of the citizens in advance of its impairment.

Accordingly, we conclude that competitive bidding is not required in an instance in which the county enters into a solid waste disposal services contract with an individual or a corporation, if it is necessary to preserve or protect the public health of the citizens of the county. Whether such is the case in Orange County is a factual matter, the finding of which does not fall within the ambit of the opinion process.

## S U M M A R Y

1. A commissioners court specifically is authorized by article 4477-7c, V.T.C.S., to enter into a long-term solid waste disposal services contract with an individual or corporation that will bind future commissioners courts.

2. The county may enter into a solid waste disposal contract with an individual or a corporation that would require the county to pay a penalty if it fails to provide within a certain period of time a specified quantity of solid waste to the individual or corporation, but only if the penalty imposed is a measure of any damages actually incurred by the contracting party or if it is part of a quid pro quo for which the county legitimately may bargain.

3. Subsection 14(a) of article 4477-7c, V.T.C.S., the Comprehensive Municipal Solid Waste Management, Resource Recovery, and Conservation Act, prevails over the provisions of article 4477-7d, V.T.C.S., because it is the latest expression of the legislature's intent regarding the authority of a home rule city to enter into a solid waste management services contract. Accordingly, subsection 14(a) of article 4477-7c, V.T.C.S., which permits a home rule city to enter into any contract regarding solid waste management for the time and under the conditions that it considers appropriate, prevails over a home rule city charter provision that limits the duration of a contract that the home rule city may enter.

4. Article 4477-7c, V.T.C.S., permits political subdivisions to enter into solid waste disposal service contracts under terms that they consider appropriate; a "cost-plus" or "cost-plus-fixed-fee" contract is permissible.

5. A county may enter into a solid waste disposal services contract with an individual or corporation without awarding such contract on the basis of the competitive bidding provisions of chapter 262 of the Local Government Code, if it is necessary to preserve or protect the public health of the citizens of the county. Whether such is the case in Orange County is a factual matter, the finding of which does not fall within the ambit of the opinion process.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jim Moellinger
Assistant Attorney General