Ammie STIMPSON, Appellant,

v.

PLANO INDEPENDENT SCHOOL DIS-
TRICT, Dr. H. Wayne Hendrick, and
Martha Hunt, in their Individual and
Official Capacities, Appellees.

No. 05–86–01245–CV.

Court of Appeals of Texas,
Dallas.

Nov. 30, 1987.

Rehearing Denied Feb. 5, 1988.

Donald W. Hill, Dallas, for appellant.

Robert E. Luna, Dallas, for appellees.

Before WHITHAM, ROWE and
McCRAW, JJ.

ROWE, Justice.

Ammie Stimpson appeals the granting of
a summary judgment in favor of the Plano

Independent School District (PISD), H. Wayne Hendrick, and Martha Hunt. Stimpson had sued these parties for damages arising from their intentional interference with her teaching contract. Hendrick is the superintendent of schools for the PISD. Hunt is the principal of Mendenhall Elementary School where Stimpson was a teacher.

Upon oral submission, Stimpson conceded that the PISD is protected in this instance by the Texas Tort Claims Act;[1] accordingly, we sever and affirm that portion of the court's judgment for PISD.

Stimpson contends that the trial court erred in granting summary judgment in favor of Hendrick and Hunt because there are genuine issues of material fact concerning whether the intentional conduct she alleged against them was outside the scope of their employment. For reasons stated below, we sustain Stimpson's point of error with respect to personal liability and reverse and remand to the trial court for further proceedings that portion of the summary judgment that denied Stimpson a cause of action against Hendrick and Hunt in their individual capacities.

Stimpson had been employed as a teacher with PISD since 1961. She was initially hired by Superintendent Hendrick. In 1974 Hunt became principal of the elementary school where Stimpson taught children with reading disabilities. Stimpson claims that Hendrick and Hunt wrongfully conspired to force her out of the school system. In 1985 Hunt, with the approval of Hendrick, "demoted" her by reassigning certain tasks in the special reading program to a teacher's aide. In another incident, in March of 1986, Stimpson asked Hunt for a letter of identification so that she could be admitted to the teacher competency test (TECAT), which was crucial to her continued employment. Stimpson claims that Hunt, again with the approval

of Hendrick, refused to give her the letter. In support of her case, Stimpson also describes a number of other incidents occurring between her and these two school officials during the school year which culminated in Stimpson's submitting her letter of resignation on March 11, 1986.

Hendrick and Hunt filed a motion for summary judgment based on their pleadings and supported by evidence consisting of their affidavits, copies of Stimpson's letter of resignation, a letter from Stimpson's doctor, and the letter of identification requested by Stimpson for TECAT which Hunt avers was timely prepared but never picked up by Stimpson. In their motion for summary judgment, Hendrick and Hunt raise seven grounds of defense.

They first argue that Stimpson failed to state a cause of action upon which relief could be granted. We do not agree. Stimpson's pleadings allege that Hendrick and Hunt by their intentional and willful actions interfered with her contractual rights and induced her to surrender her contract.[2] The four essential elements of Stimpson's cause of action are that: (1) there is a contract subject to interference, (2) the act of interference was willful and intentional, (3) such intentional act was the proximate cause of her damage, and (4) actual damage or loss occurred. *See Armendariz v. Mora,* 553 S.W.2d 400, 404 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r. e.). Thus, Stimpson has pleaded a cause of action for which damages can be awarded.

■ In their motion for summary judgment Hendrick and Hunt rely on three affirmative defenses: estoppel, failure to exhaust administrative remedies, and good faith immunity. When a defendant moves for summary judgment on the basis of an affirmative defense, the movant must prove conclusively all elements of the defense as a matter of law with no genuine

---

1. TEX.CIV.PRAC. & REM.CODE ANN. § 101.051 (Vernon 1985).

2. We note that plaintiff's original petition seeks recovery against Hendrick and Hunt for their

tortious interference with her contract either while acting as agents in behalf of PISD or while acting as individuals in their own behalf.

issue of a material fact remaining. *See Palmer v. Enserch Corp.*, 728 S.W.2d 431, 435 (Tex.App.—Austin 1987, writ ref'd n.r. e.). Further, all doubts concerning the existence of a material fact question are to be resolved against the movant, and the evidence is to be viewed in a light most favorable to the nonmovant. *See Major Investments, Inc. v. De Castillo*, 673 S.W.2d 276, 279 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.).

■ The movants, Hendrick and Hunt, argue that Stimpson is estopped from asserting a claim of intentional interference with a contract because she voluntarily resigned her employment with PISD. We do not agree. There are at least three grounds supporting the conclusion that estoppel founded on Stimpson's letter of resignation does not provide Hendrick and Hunt an absolute defense as a matter of law. First, since estoppel is a doctrine designed to protect the innocent, a party may not urge an estoppel in his favor to shield him from his own tortious acts. *See Brodrick Moving & Storage Co. v. Moorer*, 685 S.W.2d 75, 77 (Tex.App.—Beaumont 1984, writ ref'd n.r.e.). Secondly, a party who alleges equitable estoppel has the burden of pleading and proving all of its elements, one of which is detrimental reliance. *Concord Oil Co. v. Alco Oil & Gas Corp.*, 387 S.W.2d 635, 639 (Tex.1965). Without reaching the legal question of whether Hendrick and Hunt can personally take advantage of communications directed to a third party, we conclude that there is neither pleading nor summary judgment evidence that Hendrick and Hunt to their injury relied upon Stimpson's letter of resignation to PISD. Finally, the courts have developed the related concept of "quasi estoppel," in which false representation and detrimental reliance need not be shown. This concept was developed to prevent a party from retaining a benefit by asserting a position to the disadvantage of another and then asserting a right which is inconsistent with that previous position. *See El Paso National Bank v. Southwest Numismatic Investment Group*, 548 S.W.2d 942, 948 (Tex.Civ.App.—El Paso 1977, no writ); 31 C.J.S. Estoppel § 107 (1964). Again, there is no pleading and no summary judgment evidence concerning any benefits flowing to Stimpson via her letter of resignation that make it unconscionable for her to go forward with this particular damage suit against Hendrick and Hunt. *See Theriot v. Smith*, 263 S.W.2d 181, 183 (Tex.Civ.App. —Waco 1953, writ dism'd). Even more importantly than the above, Stimpson's controverting affidavit in and of itself places at issue the reason for her resignation. She affirms that she did not voluntarily resign her position because of health problems, but submitted her letter of resignation merely to avoid confrontation with Hendrick and Hunt. Thus, the very basis of the claimed estoppel is subject to a factual dispute. Pending a resolution of this factual dispute, Hendrick's and Hunt's estoppel defense cannot be resolved through summary judgment proceedings.

■ Movants next argue that Stimpson has failed to exhaust her administrative remedies as required by law. We assume, without deciding, that movants are referring to the teacher employment contracts provisions appearing in §§ 13.101–13.116 of the Texas Education Code. We note that Stimpson has now conceded that PISD is immune from suit and should no longer be a party. Thus, we do not agree that this section of the code protects Hendrick and Hunt. The facts establish that Stimpson resigned, not that she was discharged by PISD. She now affirms that the actuating cause of her resignation was conduct by Hendrick and Hunt which went beyond their official duties. While official action taken by PISD against Stimpson may fall within the scope of §§ 13.111–13.116, those administrative remedies do not pertain to such damages as Stimpson seeks against parties acting outside the scope of their employment for PISD. Accordingly, under this record Stimpson cannot be barred by her failure to pursue some administrative remedy.

■ The movants next argue that all acts of Hendrick and Hunt were fair and done in good faith and within the scope of their employment, entitling them to "good faith immunity." They also argue that they did not intentionally and willfully interfere with Stimpson's contract.

While a summary judgment may be granted on affidavits from interested parties, such affidavit evidence must be clear, positive, direct, credible, free from contradictions, and susceptible of being readily controverted. *De Castillo*, 673 S.W.2d at 276; *Futerfas v. Park Towers*, 707 S.W.2d 149, 157 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); TEX.R.CIV.P. 166–A.

Here, both supporting affidavits are from interested parties who claim their actions were done in good faith with no ill will toward the claimant and are, at best, self-serving statements of their intentions and beliefs. When a similar matter was presented for review, the Corpus Christi Court of Appeals held that: "Issues of good faith are not susceptible to being readily controverted. They are best left to the fact finder for determination." *De Castillo*, 673 S.W.2d at 279. Likewise, claims of conspiracy are not subject to being controverted conclusively by the affidavits of interested parties. *Futerfas*, 707 S.W.2d at 157. Thus, the affidavits in this record will not as a matter of law exculpate affiants from charges of either conspiracy or intentional tort.

Hendrick's affidavit confirms Stimpson's employment contract and letter of resignation and then states in pertinent part: "Any actions taken by me in regard to

Ammie Stimpson *have been done in my official capacity* as Superintendent of Schools...." (emphasis added). Hunt's affidavit confirms Stimpson's request for a letter of identification for admittance to the TECAT test and states in pertinent part: "During all the events herein in question, all dealings by me, with or concerning Mrs. Stimpson, *were done in ... performance of my duties ...*" (emphasis added). By these self-serving statements, the two school officials seek to establish the absence of activities beyond the scope of their official duties.

At this point it is helpful to review the general rule on personal liability of school district officials. As stated in *Russell v. Edgewood Independent School District*, 406 S.W.2d 249, 252 (Tex.Civ.App.—San Antonio 1966, writ refused n.r.e.): "Trustees and agents of a school district, while acting in such official capacity, enjoy the same governmental immunity as does the school district." *Edgewood*, however, recognizes an exception to this general rule where the official abandons his official duties and becomes a mere intermeddler. The *Edgewood* court concluded that, "[a]s long as [the superintendent] was acting within the scope of his employment as a school superintendent he cannot be held personally liable in a tort action, except in such cases which involve individual and separate torts ..." [3] To the same effect *see O'Haver v. Blair*, 619 S.W.2d 467, 468 (Tex.App.—Houston [14th Dist.] 1981, no writ) (on motion for summary judgment one of the fact questions remaining was whether teacher who struck student in the mouth was within the scope of his employ-

---

3. We concede that § 21.912(b) of the TEX. EDUC.CODE ANN. (Vernon Supp.1987) gives protection from personal liability to school district professional employees if their actions are performed within the scope of their employment. *Barr v. Bernhard*, 562 S.W.2d 844, 849 (Tex.1978) (no liability for school employees where student was injured when roof collapsed on a Saturday and no school personnel were present). *Hopkins v. Spring Independent School District*, 706 S.W.2d 325, 328 (Tex.App.—Houston [14th Dist.] 1986, *aff'd*, 736 S.W.2d 617 (Tex. 1987) (no liability for personal injuries resulting from negligent acts). In particular, *see Davis v. Houston Independent School District*, 654 S.W.2d 818, 822 (Tex.App.—Houston [14th Dist.] 1983, no writ). In *Davis* the plaintiff alleged that the individuals *as agents* for the school district had wrongfully interfered with her contractual relations in denial of her health benefits. *Davis* on its facts is distinguishable from the case under review because liability of the school officials was there predicated on agency and, to the extent school officials act only as agents, their liability exposure clearly falls within the protective scope of § 21.912(b).

ment); *Kelly v. Galveston County*, 520 S.W.2d 507, 513 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ) (officials and employees can be held personally liable if they exceeded the legitimate bounds of their office).

In this case we conclude that Hendrick and Hunt by their summary judgment proof have not conclusively established that all their dealings vis-a-vis Stimpson were undertaken as official duties which shielded them from personal liability. Especially when those considerations noted below with reference to Stimpson's controverting affidavit are taken into account, a disputed fact issue on scope of employment remains to be determined by the fact finder.

The movants next argue that they were not the proximate cause of any illness which resulted in Stimpson's resignation. We find no merit in this contention. Stimpson's cause of action asserts that Hendrick and Hunt intentionally and willfully interfered with her PISD contract, not that they caused an illness which resulted in her resignation.

Next, we consider Stimpson's response to the motion of Hendrick and Hunt for summary judgment. Stimpson filed her controverting affidavit and a corroborating affidavit from her husband. Generally, in reviewing affidavits filed in opposition to summary judgments, the nonmovant's affidavit should be accepted as true, and every reasonable inference should be drawn in favor of the nonmovant. *See University of Texas Health Science Center v. Big Train Carpet*, 739 S.W.2d 792 (Tex.1987); *Nixon v. Mr. Property Management*, 690 S.W.2d 546, 548–49 (Tex.1985). If a movant establishes an affirmative defense which would bar the suit as a matter of law, then the nonmoving party must adduce summary judgment proof raising a fact issue in avoidance of that affirmative defense. *See Palmer*, 728 S.W.2d at 435. The proof in this instance, however, need only be sufficient to raise such issue of fact; the evidence need not be sufficient to meet the

burden of persuasion that the nonmovant would have at trial. *See Cloys v. Turbin*, 608 S.W.2d 697, 700 (Tex.Civ.App.—Dallas 1980, no writ).

Stimpson's affidavit states in part that Hunt, with Hendrick's knowledge and approval, embarrassed, harassed, and emotionally abused her. She also states:

I am convinced that the actions of Martha Hunt and Wayne Hendrick were purposely and intentionally designed to force me out of the school system.

I did not resign because of my health. I have been confined to a wheel chair for several years, yet I continued to teach. I stated in my letter of resignation that my health was the reason for my resignation, but I was merely trying to avoid a direct confrontation with Mrs. Hunt. My emotional state was not good because of the pressure that had been brought to bear on me during the previous 6 months.

In addition, Stimpson describes Hendrick's and Hunt's wrongful acts as including: constructive demotion by removing some of her previous teaching duties, moving her to a smaller classroom, and placing obstacles in the entrance and hallway of the school to make her mobility more difficult because of her physical handicap. On the positive side, Stimpson affirms that her performance as a teacher has always been so exemplary that her employer could only have benefitted from her retention.

Since we must view the evidence in a light most favorable to the opposing party, we accept the statements of Stimpson as true. We hold that Stimpson's controverting affidavit creates fact questions concerning: (1) whether Hendrick and Hunt acted willfully and intentionally so as to improperly interfere with her PISD contract; and (2) whether they acted outside the scope of their employment adversely to the best interests of their employer. Thus, we sustain Stimpson's sole point of error.

That portion of the summary judgment pertaining to PISD is severed and affirmed; the remaining portion of the summary

judgment pertaining individually to Hendrick and Hunt is reversed and remanded.

McCRAW, J., dissents with an opinion.

McCRAW, Justice, dissenting.

I concur with the majority's holding that PISD is protected by the Texas Torts Claims Act and is immune from this suit in tort. However, I dissent from the majority's reversal of the summary judgment entered in favor of Superintendent Hendrick and Principal Hunt.

It is undisputed that Hendrick and Hunt are employees of PISD and as such, are immune from liability for actions performed within the scope of their employment, except in limited circumstances, not relevant here. *See Russell v. Edgewood Independent School District*, 406 S.W.2d 249, 252 (Tex.Civ.App.—San Antonio 1966, no writ); TEX.EDUC.CODE ANN. § 21.912(b) (Vernon Supp.1987); TEX.CIV. PRAC & REM.CODE ANN. § 101.051 (Vernon 1986). I agree with the majority that when the issue of "scope of employment" is joined at trial a fact issue exists. *See, e.g. O'Haver v. Blair*, 619 S.W.2d 467, 468–69 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ). However, this is not the case before us.

Stimpson's case theory as pleaded, places Hendrick and Hunt's actions within the scope of their employment. Stimpson's original petition pleads: "[Stimpson's employment agreement] was tortiously destroyed by the Defendant Plano Independent School District *by and through* the intentional and willful actions of Defendants Hendrick and Hunt." (Emphasis added.) This allegation clearly complains of the wrongful actions of PISD, which Hendrick and Hunt willfully performed in their official capacities. PISD's actions being protected as a matter of law should also immunize any employees *by and through* which PISD's actions were carried forth. I would affirm; the trial court ruled correctly.