Wilfred BATES, Appellant,

v.

DALLAS INDEPENDENT SCHOOL DISTRICT; Chad Woolery, in his official capacity as superintendent of the Dallas Independent School District, Clarence C. Russeau, individually and in his official capacity as principal of Carter High School of the Dallas Independent School District; and The Board of Trustees for the Dallas Independent School District, et al., Appellees.

No. 05–95–01563–CV.

Court of Appeals of Texas, Dallas.

Feb. 20, 1997.

Rehearing Overruled March 31, 1997.

Rehearing Overruled Oct. 23, 1997.

Daniel A. Ortiz, Ortiz & Robinson, L.L.P., Arlington, for Appellant.

Dennis J. Eichelbaum, Schwartz & Eichelbaum, P.C., Dallas, for Appellees.

Before LAGARDE, KINKEADE and MALONEY, JJ.

**OPINION**

LAGARDE, Justice.

This case is an appeal by former public school teacher Wilfred Bates of the trial court's grant of summary judgment in favor of the Dallas Independent School District (DISD); Marvin Edwards, in his official ca-

pacity as superintendent of DISD;[1] Clarence C. Russeau, individually and in his official capacity as principal of Carter High School; the DISD board of trustees; and Yvonne Ewell, Kathlyn Gilliam, Thomas Jones, Dan Peavy, John Rogers, Mary Rutledge, Richard Curry, Rene Castilla, and Betty Vondracek, in their official capacities as members of the board of trustees. Bates claims that the school district violated certain of his constitutional rights, that it constructively discharged him, and that his principal tortiously interfered with his contractual relationship with the school district. In one point of error, Bates contends that the trial court erred in granting summary judgment because genuine issues of material fact remain. We affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Bates was a math teacher at Carter High School in Dallas. Russeau was principal of Carter. Russeau transferred a failing math student/athlete out of Bates's class and into another teacher's class. Russeau instructed Bates to give the student a passing grade. As a result of an anonymous telephone call, the Texas Education Agency (TEA) and the University Interscholastic League (UIL) began investigating Carter's grading policies. Following their investigations, which included public hearings at which Bates testified, the commissioner of education disqualified Carter from the state football playoffs. DISD later obtained a court order that allowed Carter to participate in the playoffs. By a letter dated January 3, 1989 and signed by then assistant superintendent Chad Woolery, DISD informed Bates that the district was transferring him to a middle school, placing him on probation for one year, freezing his salary during probation, giving him an unsatisfactory rating for the 1988–89 school year, and prohibiting him from teach-

ing math while on probation. Bates alleges that these acts were in retaliation for his testimony at the hearings.

Bates appealed to an administrative panel of DISD. That panel upheld DISD's decision with the exception of the prohibition against teaching math. Bates appealed the panel's decision to the DISD board of trustees. The board, by a 3–3 vote, purportedly upheld the administrative panel's decision. Bates appealed the board's decision to the TEA, abandoning the issue of involuntary transfer. The TEA granted all relief Bates sought, holding that the board's 3–3 vote actually *overturned* the administration's decision. Despite the TEA's favorable ruling, Bates filed this suit in district court in 1991. Bates resigned from teaching in 1993.[2]

Bates asserted multiple claims, including several constitutional violations. Bates claimed that appellees deprived him of his liberty and property interests in his rights to freedom of speech, free association, and academic freedom under the First Amendment[3] and state law; his liberty and therefore his right to procedural and substantive due process as guaranteed by the Fifth and Fourteenth Amendments;[4] and his Fourteenth Amendment[5] right to equal protection. Bates further claimed that appellees acted arbitrarily and capriciously, with no rational basis or compelling reason for discrimination.

Bates asserted that Russeau, Edwards, and the board of trustees acted as policymakers for DISD. Bates claimed that appellees' conduct *violated* their own written policies and practices. Bates's petition, however, also asserted that appellees acted *pursuant to* the official policies and customs of DISD and sought a court order declaring the DISD policies and practices violative of the First, Fifth, and Fourteenth Amendments.[6]

---

1. Bates later amended his pleadings to show that Chad Woolery replaced Marvin Edwards as DISD superintendent.

2. Although the parties' briefs use the words "resign" and "retire" interchangeably, the record contains Bates's March 28, 1995 affidavit in which he says he "was forced to resign."

3. U.S. Const. amend. I.

4. U.S. Const. amend. V; U.S. Const. amend. XIV.

5. U.S. Const. amend. XIV.

6. Bates did not plead these claims in the alternative.

Bates also asserted claims of breach of contract, constructive termination, and tortious interference with his employment contract. Bates further argued that appellees violated an implied covenant to deal with him fairly and in good faith.[7]

Appellees answered, contending that Bates had not exhausted his administrative remedies; the First Amendment does not guarantee a teacher the right to give a student a particular grade; Bates's Fourteenth Amendment liberty interest and due process claims failed; appellees were protected from this suit by governmental immunity; Russeau was not a policymaker; Bates's appeal from the TEA decision should have been filed in district court in Travis County; and Bates's claim was barred by the statute of limitations, collateral estoppel, and res judicata.

Appellees then moved for summary judgment, claiming that Bates's administrative appeals completely restored him; Bates failed to exhaust his administrative remedies; assigning grades is not protected by the First Amendment; Bates had no property interest in assignment to a particular school; no DISD custom or policy deprived Bates of any rights, privileges, or immunities; a principal is not a policymaker; all appellees enjoyed immunity from Bates's claims; these matters were not matters of public concern; and Bates was not constructively discharged.

As summary judgment evidence, appellees presented Bates's original petition; Bates's December 9, 1994 and January 5, 1995 depositions; three of Bates's employment contracts with the DISD; DISD's letter informing Bates of his transfer, probation, prohibition from teaching math, and salary freeze; and the commissioner's decision in Bates's administrative appeal.

Bates responded to appellees' motion for summary judgment, contending that appellees supported their motion for summary judgment with an unverified copy of Bates's deposition; Bates did exhaust his administrative remedies; the speech at issue was public; he was denied a property right because he was constructively discharged after the year in question but in the middle of a five-year contract; Russeau was not immune because he abandoned his official duties and became a mere intermeddler; and DISD was not immune from claims of breach of contract. In support thereof, Bates offered his own March 28, 1995 affidavit; Dr. Bailey M. Marshall's January 13, 1994 deposition; Walter Rambo's January 8, 1993 deposition (in which Rambo states that the tip to the UIL was anonymous); DISD's letter informing Bates that Carter's grading policies were under investigation and that Bates was being placed on administrative leave; DISD's letter informing Bates of his transfer, probation, prohibition from teaching math, and salary freeze; the board of trustees' findings and decision; the commissioner's decision; Bates's March 20, 1992 teaching contract; and several DISD announcements regarding teaching contracts.

Bates also moved for summary judgment, contending that appellees acted in contravention of their own policies and thus breached his employment contract. In support of this motion, Bates offered his January 26, 1995 affidavit; the DISD administrative council hearing panel's judgment and order; the commissioner's decision; and DISD's letter informing Bates of his transfer, probation, prohibition from teaching math, and salary freeze.

Appellees responded that Bates failed to exhaust his administrative remedies; Bates elected his remedy by appealing to the TEA; Travis County was the proper venue; DISD did not violate its policies; and DISD ruled in favor of Bates and thus Bates was estopped from claiming that DISD breached

---

7. We note that Bates's pleadings also requested a name clearing hearing. The order granting summary judgment states that all relief not expressly granted is denied. *See Inglish v. Union State Bank*, 40 Tex. Sup.Ct. J. 234, 945 S.W.2d 810 (1997) (per curiam).

We also note that Bates's brief addresses the issue of good faith only as it pertains to whether Russeau acted within the scope of his employment. Bates does not make any argument or cite any authority in his brief contending that any other appellee acted in bad faith. Therefore, we will address Bates's claim of bad faith only as it pertains to Russeau. Bad faith claims against any other appellees have been waived for failure to brief on appeal. Tex.R.App.P. 74(f).

his contract, constructively discharged him, or discriminated against him. Appellees claimed that either fact issues remained or contrary facts favorable to them were conclusively established.

On July 7, 1995, the district court denied Bates's motion for summary judgment and granted appellees' motion for summary judgment on all causes of action relating to involuntary transfer, prohibition from teaching math, Title 42, section 1983 of the United States Code, First Amendment, tortious interference, and mental anguish. The trial court also granted Russeau summary judgment on all claims of involuntary transfer, probation, salary freeze, and prohibition from teaching math. The court specifically denied all other relief. After Bates nonsuited his breach of contract claim, this appeal followed.[8]

### SUMMARY JUDGMENT

In his only point of error, Bates argues that the district court erred in granting summary judgment because genuine issues of material fact preclude summary judgment as a matter of law. Bates contends that these issues include whether appellees retaliated against Bates for his exercise of protected free speech, whether appellees deprived Bates of a property right in the remainder of his teaching contract, whether Bates was constructively discharged, and whether Russeau acted outside the scope of his authority in dealing with Bates, thereby tortiously interfering with Bates's continual relationship with the DISD.

Appellees argue that the district court properly granted summary judgment because Bates was not constructively discharged, but, instead, retired from teaching upon doctors' orders. Appellees also contend that the disciplinary actions did not violate Bates's constitutional rights and that qualified immunity protects them from Bates's claims of tortious interference.

### Applicable Law

■ The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex.R.Civ.P. 166a(c); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex. 1985); *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972). The grounds for summary judgment must be presented in the summary judgment motion itself. Tex.R.Civ.P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 339 (Tex.1993). The judgment sought shall be rendered forthwith if the summary judgment evidence shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response. Tex.R.Civ.P. 166a(c). Issues not expressly presented to the trial court by written motion, answer, or other response shall not be considered on appeal as grounds for reversal. Tex.R.Civ.P. 166a(c).

■ When the defendant is the movant, summary judgment is proper only if the plaintiff cannot, as a matter of law, succeed upon any theory pleaded. *See Peirce v. Sheldon Petroleum Co.,* 589 S.W.2d 849, 852 (Tex. Civ.App.—Amarillo 1979, no writ). A defendant moving for summary judgment must either disprove at least one element of the plaintiff's theory of recovery or plead and conclusively establish each essential element of an affirmative defense. *Zep Mfg. Co. v. Harthcock,* 824 S.W.2d 654, 657 (Tex.App.— Dallas 1992, no writ). Conversely, the plaintiff can bar the defendant's motion for summary judgment by presenting evidence that creates a fact question on those elements of the plaintiff's case under attack by the defendant or on at least one element of each affirmative defense advanced by the defendant. *Torres v. Western Cas. Sur. Co.,* 457 S.W.2d 50, 52 (Tex.1970); *see also Puga v. Donna Fruit Co.,* 634 S.W.2d 677, 680–81 (Tex.1982). Alternatively, the plaintiff can defeat the motion by conceding that the material facts are undisputed, but convincing the court that the defendant's legal position is unsound. *See Estate of Devitt,* 758 S.W.2d

---

**8.** The record reflects that Bates appealed only from the grant of summary judgment to appellees, not from the denial of his own motion for summary judgment.

601, 602 (Tex.App.—Amarillo 1988, writ denied).

## VIOLATION OF FIRST AMENDMENT RIGHTS

Bates argues that Russeau is liable in his individual capacity for violating Bates's First Amendment rights by ordering Bates to change the student's grade and recommending and initiating adverse employment action against Bates in retaliation for his testimony at the UIL and TEA hearings.

Appellees assert that Bates failed to allege a DISD policy or custom that deprived him of a constitutionally protected right, that DISD cannot be subject to section 1983 liability for the acts of Russeau, who has no policymaking authority for DISD, and that DISD cannot be held liable solely on a respondeat superior theory. Appellees argue that Bates pleaded no facts showing that a DISD custom or policy existed that permitted DISD employees to harass Bates in violation of his rights; therefore, this is a tort case, not a constitutional case, because negligence alone will not support a federal constitutional claim against a school district. Appellees assert that a school district cannot be held liable solely on a respondeat superior theory because it employs a tort-feasor. Appellees argue that superintendents and principals are entitled to qualified good faith immunity. Appellees further assert that changing a grade is not a protected activity because it is not a matter of public concern.

### Applicable Law

Section 1983 of Title 42 of the United States Code provides a remedy for violations of rights protected by the Constitution. *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th Cir.), *cert. denied*, 513 U.S. 815, 115 S.Ct. 70, 130 L.Ed.2d 25 (1994); *see* 42 U.S.C.A. § 1983 (West 1994).[9] To state a claim under section 1983, a plaintiff must allege a violation of rights secured by the

Constitution or laws of the United States and must demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1402 (5th Cir.1996).

■ However, respondeat superior is not a basis for liability under section 1983. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 736, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989). To prevail on a section 1983 claim against a school district, one must show that the violation of his rights was caused by an official custom or policy of the school district itself. *Id.* at 735–36, 109 S.Ct. at 2723 (citing *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978) (municipality cannot be held liable for violation of civil rights solely because an employee is a tort-feasor)). Only when execution of a district's policy or custom inflicts the injury is the district as an entity responsible under section 1983. *See Monell*, 436 U.S. at 694, 98 S.Ct. at 2037–38. And only the school board of trustees has final policymaking authority for a school district. *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir.1993).

■ Liability may be based upon violations of academic freedom. Academic freedom has its roots in the First Amendment insofar as it protects against infringements on a teacher's freedom concerning classroom content and method. *Hillis v. Stephen F. Austin State Univ.*, 665 F.2d 547, 553 (5th Cir.), *reh'g denied*, 669 F.2d 729 (5th Cir.), *cert. denied*, 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982). However, a teacher's refusal to assign a grade to a student as instructed by his superiors is not a teaching method. *Id.* Therefore, refusal to assign a grade to a student is not a principle of academic freedom protected by the First Amendment. *Id.* at 552.

■ Public school teachers do not shed their First Amendment protection in speaking on matters of public concern. *Kirkland*

---

9. Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....

42 U.S.C.A. § 1983 (West 1994).

*v. Northside Indep. Sch. Dist.,* 890 F.2d 794, 798 (5th Cir.1989), *cert. denied,* 496 U.S. 926, 110 S.Ct. 2620, 110 L.Ed.2d 641 (1990). However, issues do not rise to a level of public concern by virtue of the speaker's interest in the subject matter. *Id.* Rather, issues achieve protected status if the words or conduct are conveyed by the teacher in his role as a citizen and not in his role as an employee of the school district. *Id.* at 798–99; *see Terrell v. University of Tex. Sys. Police,* 792 F.2d 1360, 1362 n. 2 (5th Cir. 1986), *cert. denied,* 479 U.S. 1064, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987). A matter not otherwise of public concern does not attain that status because its subject matter could, in different circumstances, have been the topic of a communication to the public that might be of general interest. *Connick v. Myers,* 461 U.S. 138, 148 n. 8, 103 S.Ct. 1684, 1691, 75 L.Ed.2d 708 (1983). If the nature of the speech is purely private, such as a dispute over one employee's job performance, a nontenured school teacher enjoys no First Amendment protection as to that speech. *Id.* at 146, 103 S.Ct. at 1689–90; *see Day v. South Park Indep. Sch. Dist.,* 768 F.2d 696, 700 (5th Cir.1985) (teacher's dispute with principal concerning negative performance evaluation is purely private matter), *cert. denied,* 474 U.S. 1101, 106 S.Ct. 883, 88 L.Ed.2d 918 (1986). Judicial inquiry then comes to an end, and the question of whether the employee's speech was a substantial or motivating factor in the district's disciplinary decisions need not even be reached. *Kirkland,* 890 F.2d at 799.

### Application of Law to Facts

■ Bates states in his pleadings that 1983 liability is based on constitutional violations due to official action, policy, or custom adopted by DISD. But he also states in his pleadings, "[d]efendants' above-described conduct was in direct contravention of [d]efendants' own written policies and/or practices." Bates provided no summary judgment evidence of a DISD policy that violated his constitutional rights. Only the board of trustees has final policymaking authority for DISD; therefore, Bates's claim that Russeau made policies and is individually or officially liable lacks merit. Furthermore, DISD can-

not be held vicariously liable to Bates under a theory of respondeat superior. Because refusal to assign a grade to a student is not a principle of academic freedom protected by the First Amendment, neither DISD, those sued in their official capacities, the board, nor Russeau violated Bates's First Amendment right to academic freedom. Because we conclude that this matter was purely private and not public, our inquiry comes to an end; and the question of whether Bates's speech was a substantial or motivating factor in DISD's or Russeau's disciplinary decisions need not be reached.

### DEPRIVATION OF PROPERTY RIGHTS

Bates argues that although a person does not have a property interest at the conclusion of a term contract for continuing employment as a school teacher, Bates resigned from DISD before his teaching contract expired. Appellees argue that Bates voluntarily retired, thereby precluding recovery for deprivation of property rights by constructive discharge.

When a party concedes a point of error at oral argument, the court of appeals may refuse to consider the point. *See Missouri–Kansas–Texas R.R. v. Heritage Cablevision of Dallas, Inc.,* 783 S.W.2d 273, 277 (Tex. App.—Dallas 1989, no writ). At oral argument, Bates conceded his claim of property deprivation in violation of federal law was meritless. Consequently, we do not consider Bates's federal claim of deprivation of property.

### CONSTRUCTIVE DISCHARGE

Bates argues that DISD constructively discharged him from employment in violation of state law. Appellees contend that Bates cannot prevail on a claim of constructive discharge because Bates resigned several years after filing suit and because Bates retired due to poor health and doctors' orders.

### Applicable Law

■ Constructive discharge occurs when an employer makes conditions so intolerable that an employee reasonably feels compelled

to resign. *See Hammond v. Katy Indep. Sch. Dist.*, 821 S.W.2d 174, 177 (Tex.App.— Houston [14th Dist.] 1991, no writ). To find a constructive discharge, a court must determine whether a reasonable person in the employee's position would have felt compelled to resign. *Id.* It is necessary to examine the conditions imposed, not the employer's state of mind. *Id.* An employee does not need to prove that an employer subjectively intended to force the employee to resign. *Id.*

■■■■ Derogatory comments resulting from disciplinary proceedings do not constitute constructive discharge. *Id.* at 177–78. Nor do unfavorable work evaluations support a constructive discharge claim. *Id.* at 178. Humiliation or embarrassment stemming from a transfer to a different position within a school district is not significant enough to support a claim for constructive termination. *Id.*

### Application of Law to Facts

■■■■ Bates's affidavit reflects the following facts: He was almost medically incapable of continuing to teach when he retired. He had a blood sugar count of about five hundred, a point at which some people go into a coma. He lost sixty pounds during the time he appealed to the boards and the courts. He retired because his doctors recommended that he get out from under whatever stress he could. He never went on workers' compensation for his ailments. Appellees accommodated him by allowing him to remain on one floor to teach and by giving him an elevator key. Bates did not resign or retire until December 1993, several years after the incidents in question, and two years after he filed this lawsuit.

In his response to DISD's motion for summary judgment, Bates did not allege any facts sufficient to raise an issue of material fact on intolerable working conditions. General allegations of mere harassment, without more, are insufficient to raise an issue of material fact as to whether working conditions were so intolerable that a reasonable person would have felt compelled to resign. Consequently, we conclude that the trial court properly granted summary judgment on Bates's claim of constructive discharge.

### TORTIOUS INTERFERENCE WITH CONTRACT

Bates argues that, to the extent Russeau acted wrongfully and outside the scope of his authority, Bates's tortious interference claim is not against the State and thus not subject to the defense of immunity. Bates further argues that Russeau was not acting in good faith and that Bates did exhaust his administrative remedies. Appellees argue that they are immune from this claim because all conduct occurred while they acted in their official capacities.

### Applicable Law

■■■ The essential elements of a claim for tortious interference with contract are: (i) a contract subject to interference, (ii) a willful and intentional act of interference, which (iii) is the proximate cause of the plaintiff's damage, and (iv) actual damage or loss. *Stimpson v. Plano Indep. Sch. Dist.*, 743 S.W.2d 944, 945 (Tex.App.—Dallas 1987, writ denied).

■■■■ School districts enjoy immunity from tort claims and are protected by the Texas Tort Claims Act. Tex.Civ.Prac. & Rem.Code Ann. § 101.051 (Vernon 1986). Trustees and agents of a school district, while acting in an official capacity, enjoy the same governmental immunity as does the school district. *Stimpson*, 743 S.W.2d at 947. As long as an official acts within the scope of his employment, he cannot be held personally liable in a tort action, except in cases that involve separate and individual torts. *Id.* An exception to this general rule exists when the official abandons his official duties and becomes a mere intermeddler. *Id.; see Kelly v. Galveston County*, 520 S.W.2d 507, 513 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ) (officials and employees can be held personally liable if they exceeded the legitimate bounds of their office).

■■■■ While summary judgment may be granted on affidavits from interested parties, such affidavit evidence must be clear, positive, direct, credible, free from contradic-

tions, and susceptible of being readily controverted. TEX.R.CIV.P. 166a(c); *Stimpson*, 743 S.W.2d at 947; *Futerfas v. Park Towers*, 707 S.W.2d 149, 157 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). Generally, in reviewing affidavits filed in opposition to summary judgment motions, the nonmovant's affidavit should be accepted as true, and every reasonable inference should be drawn in favor of the nonmovant. *Nixon*, 690 S.W.2d at 548–49.

### Application of Law to Facts

Bates sued the DISD, Woolery in his official capacity, Russeau in his official and individual capacities, the board of trustees, and several members of the board in their official capacities. DISD, Woolery, the board, and the board members are immune from tort claims in their official capacities.

■ As to Russeau's personal liability, we accept as true Bates's January 26, 1995 affidavit filed in support of his motion for partial summary judgment and Bates's March 28, 1995 affidavit filed in opposition to appellees' motion for summary judgment and we draw every reasonable inference in favor of Bates. In his affidavits, Bates stated that he was relieved of his duties to teach by Marvin Edwards. By letters, Edwards and Woolery relieved him of his duties, prohibited him from teaching math, reassigned him to another school, placed him on probation, gave him an unsatisfactory evaluation, and froze his salary. He appealed *Woolery's* recommendations. Marvin Edwards was responsible for Bates's suspension, involuntary transfer, probation, salary freeze, and prohibition from teaching math. Bates filed suit for conduct which placed him on probation, prohibited him from teaching math, froze his salary, involuntarily transferred him, and gave him unsatisfactory evaluations. Accepting Bates's affidavits as true, we conclude that they are not sufficient to raise a fact issue on whether Russeau, either in his official or individual capacity, engaged in tortious interference or acted in bad faith.

### CONCLUSION

We hold that the trial court properly granted summary judgment in favor of appellees on all causes of action. Accordingly, we overrule Bates's point of error and affirm the trial court's judgment.