United States Court of Appeals,

Fifth Circuit.

No. 96-11468.

James A. LONG, and wife;  James A. King, and wife;  Raymond King, and wife;  Jerry Pate Long, and wife;  Homer L. Long, and wife;  Kelvin King, and wife;  Truman Smith, and wife;  Sam Fulton, and wife;  David Sweeney, and wife;  Jimmy Sweeney, and wife;  James Sweeney;  Bob Graves, and wife;  John Ratliff, and wife;  Dennis Ratliff, and wife;  J.P. Ratliff, and wife, Plaintiffs-Counter Defendants-Appellees-Cross Appellants,

 Gayle Long;  Mary Ann King;  Minnie Lee King;  Susie Long;  Ann Long;  Sharon King;  Nadaiah Smith;  Madge Fulton;  Sue Sweeney;  Lynette Sweeney;  Mariana Graves;  Diana Ratliff;  Toni Ratliff;  Mary Blanche Ratliff, Plaintiffs-Counter Defendants-Appellees,

v.

Kenneth T. TURNER, Individually, Defendant-Counter Claimant,

and

Firstrust Corporation, Defendant-Counter Claimant-Appellant-Cross Appellee.

Feb. 6, 1998.

Appeals from the United States District Court for the Northern District of Texas.

Before GARWOOD, DUHÉ and DeMOSS, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiffs-appellees Long, *et al.,* (appellees) brought this Texas law diversity action against defendant Kenneth Turner (Turner), individually, and defendant-appellant Firstrust Corporation (Firstrust) seeking a declaratory judgment, pursuant to 28 U.S.C. § 2201, that appellees had been released from liability on a judgment by the Resolution Trust Corporation (RTC), Firstrust's predecessor in interest as owner of the judgment. Firstrust now appeals the district court's determination that the

debt had been released through the issuance of Internal Revenue Service (IRS) forms 1099A and that Firstrust is not entitled to attorneys' fees. Appellees cross-appeal the denial of their attorneys' fees. Concluding that the district court misapplied Texas law concerning the release of a debt, we reverse the declaratory judgment, but affirm the court's decision denying attorneys' fees to both parties.

### Facts and Proceedings Below

The current dispute concerns the legal significance of IRS forms 1099A that were issued by the RTC to appellees, who owed an outstanding judgment, then owned by the RTC, on an unpaid loan that they had guaranteed.

The fifteen male appellees guaranteed a loan from MeraBank, Texas, FSB to I.G.P., Inc. in 1984. When the loan went unpaid, MeraBank pursued the debt against the eighteen guarantors and the borrower, I.G.P., and eventually obtained a judgment on August 23, 1990, for the principal of $113,000, plus attorneys' fees and interest, against appellees jointly and severally.

Shortly thereafter, in 1991, MeraBank experienced financial difficulties of its own, the immediate result of which was that the Office of Thrift Supervision ordered a pass-through receivership into a new entity (New MeraBank Texas, FSB) that was placed into conservatorship with the RTC. As conservator, the RTC assumed control over New MeraBank's assets, including the I.G.P. loan and

2

the outstanding judgment against appellees.[1]

In January 1992, while New MeraBank was in conservatorship, an IRS form 1099A, entitled "Acquisition or Abandonment of Secured Property," was issued by New MeraBank in its name to each appellee (in respect to calendar year 1991) reflecting his *pro rata* share of the outstanding judgment principal, excluding attorneys' fees and interest.[2] The district court found that the 1099s were issued "so that the borrower/judgment debtor could report on his or her [federal income] tax return the event of the forgiveness of the indebtedness and the benefit conferred."[3] Two months later, in

---

[1]As a matter of convenience, we have referred to the RTC as "owner" of the judgment. That is not technically correct. Since the RTC was a conservator, rather than a receiver, it merely gained control, not ownership, of New MeraBank's assets. The assets were owned by New MeraBank, and thus the transactions at issue in this case concerning former MeraBank assets were ordered by the RTC but were ultimately executed by it in New MeraBank's name and on its behalf.

[2]The original judgment of $113,000 was rendered jointly and severally against eighteen guarantors and I.G.P. It appears from the record that only sixteen 1099A forms in the amount of $7062.50 each were issued (for a total of $113,000). Each of the male appellees received one, and the sixteenth 1099A form was sent to a guarantor who is not a party to the current litigation. The "Description of Property" block on each form contains the words "Promissory Note & Guaranty Agreement." There is no reference to the judgment. The forms are unsigned.

[3]The district court found that "[s]ome of the plaintiffs reported income as a result of the 1099A on their 1991 [federal income] tax form and some did not." This is the only finding made as to any income tax payments or reporting by plaintiffs; no finding is made as to any assessment by the IRS or any actual liability to the IRS in regard to the subject matter of the 1099As on the part of any individual plaintiff or plaintiffs collectively. The only evidence of any income tax payments made (or reported or assessed as owing) as a result of, or in relation to, the 1099As or their subject matter, are payments of $1,059.39 each by plaintiffs Dennis Ratliff and John Ratliff and $1,050 by plaintiff Truman Smith. In its conclusions of law, the district court opined

3

March 1992, the "Asset Manager" of the RTC, in its capacity as conservator of New MeraBank, made a request to write off the I.G.P. promissory note.[4]  The write-off request was approved by the RTC Managing Agent on March 17, 1992, and the loan file was transferred to the RTC's Asset Recovery Division.  On April 3, 1992, the New MeraBank went into receivership, with the RTC acting as receiver.

On November 15, 1992, in its capacity as New MeraBank's receiver, the RTC sold the outstanding August 23, 1990, judgment. The RTC executed a "Quitclaim Assignment of Judgment," which transferred the RTC's rights under the judgment against appellees to Firstrust Corporation without recourse, representation, or warranty.

Thereafter, much to the dismay of appellees, Firstrust attempted to collect on the judgment and initiated a state court garnishment action.  Believing that the judgment debt had been released by the RTC, as conservator of New MeraBank, appellees

---

"[w]hen the 1099s were issued, in addition to the indebtedness being forgiven, each plaintiff recipient had a taxable event.  They became a recipient of income based upon a discharge of the indebtedness from the judgment creditor....  Whether or not they paid the IRS what they owed on their 1991 1040 is of a matter between them and the IRS and is not before the Court."  As we hold that the issuance of the 1099s did not discharge plaintiffs' liability on the judgment, it follows that they did not thereby become "a recipient of income based upon a discharge of the indebtedness from the judgment creditor."

[4]In its request, the RTC noted, as "reasons for write off," that:  I.G.P. and James Sweeney, a guarantor and appellee, were in bankruptcy;  another guarantor, Howard Watson III, had already been discharged from bankruptcy;  H.H. Adams, a guarantor, had passed away and his estate had settled for $7,000;  and the loan amount was not big enough to warrant asset searches on the fifteen remaining guarantors.  The request asks for permission "to write the loan balance to zero."

brought the instant action, seeking a declaration from the district court that the debt had been discharged by the issuance to them of the 1099A forms. Additionally, they also asserted claims of wrongful garnishment, conversion, unreasonable collection efforts, and negligence.

The case was tried to the court without a jury in July 1996. The district court, in its Findings of Fact and Conclusions of Law, ruled that the RTC, in its capacity as conservator of New MeraBank, had entirely released appellees of the judgment debt through its issuance to them of the 1099A forms, and, thus, that the judgment which Firstrust had subsequently purchased from the RTC was no longer enforceable against appellees. The court denied appellees' other claims, found no liability as to Turner individually, and did not award attorneys' fees to either party.

We reverse the district court's ruling as to the release of the judgment debt through issuance of the 1099A forms, but affirm the court's denial of attorneys' fees to both parties.[5]

## Discussion

I. Enforceability of the Judgment

In this appeal, the primary issue we are asked to decide is whether, under Texas law, a creditor releases a debt by issuing to the debtor an IRS form 1099A in respect thereto and then writing the debt off.

The district court found that "the issuance of the 1099A forms

---

[5]No appeal has been taken from the district court's denial of the other claims.

by the RTC evidenced their intent to forgive the debt ... and their intent to write off the judgment debt." The court also found that "the write-off of the judgment debt and the issuance of the 1099 forms was inconsistent with the further enforcement of the judgment" and that "[t]he judgment debt was forgiven." In its conclusions of law, the court determined that "the RTC released the judgments when they issued the 1099 forms," "[t]he judgment involved in this case is not subject to continued enforcement," and "[t]he judgment being satisfied by the issuance of a 1099, that event occurring before assignment of the judgment creditor (RTC), the satisfaction thus bars the assignee (the defendant FirstTrust Corporation) from enforcing the judgment." The court did not cite any principle of Texas law that would lend credence to these conclusions concerning release, satisfaction, or discharge of the judgment debt. In its judgment, the district court declared "that the Resolution Trust Corporation released judgments [sic] against the Plaintiffs ... so that Defendants cannot now collect from Plaintiffs on those judgments [sic]."

Even if the court was correct that the issuance of a 1099A form is evidence of an intent in some sense to "forgive" the debt, we find, as a matter of Texas law, that such an intent alone is insufficient to release or discharge a debt.[6] Furthermore, we hold that a write-off of a debt on the creditor's books is an accounting

---

[6]Because intent alone is insufficient, we need not reach the issues of whether there was sufficient evidence that the RTC intended to "forgive" the debt or whether the issuance of a 1099A form reflects such an intent as matter of law.

practice that does not of itself amount to a discharge or release of the debt.

*A. Release or Discharge of Debt*

It is well established in Texas that the mere communicated intent to forgive, without some further action by the creditor or debtor, cannot be the basis of a debt release or discharge. The general principle is that without additional consideration, a debtor's part-payment of a liquidated debt does not constitute an accord and satisfaction, even if the creditor and debtor agree that the debt is thereby discharged. *See Jenkins v. Henry C. Beck Co.,* 449 S.W.2d 454, 455 (Tex.1969) (setting out the requirements of accord and satisfaction); *Jeanes v. Hamby,* 685 S.W.2d 695, 697 (Tex.App.—Dallas 1984, writ ref'd n.r.e) (holding that the payee of a note who had obtained a judgment against guarantors did not release the judgment by executing a release in exchange for a part-payment of the judgment); *Mathis v. Bill De La Garza & Associates,* 778 S.W.2d 105, 107 (Tex.App.—Texarkana 1989, no writ) (holding that "the mere payment and acceptance of a sum of money less than the amount of an *undisputed* indebtedness does not constitute an accord and satisfaction.") (emphasis in original); 1 Tex.Jur.3d *Accord and Satisfaction* § 11 (1993).

While consideration is not necessary for a debt to be discharged by gift from the creditor to the debtor, here appellees did not claim below (in their final amended complaint or in the pretrial order) that New MeraBank (or the RTC) had made any gift to them, and the district court made no finding or conclusion that

7

there had been any gift. Nor would the evidence sustain any such finding. "The person claiming that a gift was made must prove the gift by clear and convincing evidence." *Dorman v. Arnold,* 932 S.W.2d 225, 227 (Tex.App.Texarkana, 1996, n.w.h.). "To constitute a gift inter vivos there must not only be a donative intention, but also a complete stripping of the donor of all dominion or control over the thing given." *Peterson v. Weiner,* 71 S.W.2d 544, 546 (Tex.Civ.App.San Antonio, 1934, writ ref'd) (no gift of note or debt represented thereby from holder to maker where former retains note).[7] Here there was plainly no "complete stripping" of New MeraBank "of all dominion or control over" the judgment debt. Although the 1099A forms do refer to "Promissory Note & Guaranty Agreement," the promissory note and guaranty agreement on which the judgment was based were retained by New MeraBank (until transferred

---

[7]*See also, e.g., Cogdill v. First National Bank of Quitaque,* 193 S.W.2d 701, 702 (Tex.Civ.App.Amarillo 1946, n.w.h.) ("... to establish a gift ... it is necessary to prove both the delivery of the subject matter by the donor to the donee and the intention to vest in the donee unconditionally and immediately the ownership of the property delivered"); *O'Donnell v. Halladay,* 152 S.W.2d 847, 850-51 (Tex.Civ.App., El Paso 1941, ref'd w.o.m.) ("In order that there be an effective gift ... there must be a delivery to or for the benefit of the donee.... By "deliver' in this sense is meant a surrender of possession of the property, or the symbol of the property, to the donee, with the intention and purpose of then vesting title in the donee"); *Benavides v. Laredo National Bank,* 91 S.W.2d 372, 374 (Tex.Civ.App.Eastland 1936, n.w.h.) (no gift unless donor " "has divested himself absolutely and completely of the title, dominion, and control of the subject of the gift' "); *Harmon v. Schmitz,* 39 S.W.2d 587, 589 (Tex.Com.App.1931) (gift requires that the donor have effected " "the irrevocable transfer of the present title, dominion, and control of the thing given, so that the donor can exercise no further act of dominion or control over it' "; the required "delivery must be not only of possession, but also of dominion and control' "; and " "the intention [to make gift] must be effected by a complete and unconditional delivery' ").

8

to Firstrust) and were not destroyed, endorsed, or marked "canceled," "released," "discharged" (or "paid"), or the like, and no express transfer or release of the note or guaranty was ever executed or delivered. The judgment is not mentioned in the 1099A forms. No purported transfer (other than to Firstrust), satisfaction, discharge, cancellation, or release of the judgment has ever been executed or delivered or noted in the records of the court entering the judgment or elsewhere.[8]

There is no evidence that appellees gave consideration in exchange for a debt forgiveness, or that New MeraBank (or the RTC) in any way divested itself of control or title to the note and guaranty and outstanding judgment by issuing the 1099A forms and writing off the debt. While the issuance of a 1099A form may reflect an intent in some sense to forgive the debt, it does not on its own have the legal effect of releasing or discharging the debt.

The fact that the New MeraBank subsequently "wrote off" the debt on its books (a fact never communicated to appellees) is even

---

[8]Moreover, New MeraBank's issuance of the 1099As—a wholly unilateral, unsolicited act—does not of itself constitute the "clear and convincing evidence" necessary to establish the donative intent required for gift. There is no evidence of any relationship between appellees and New MeraBank other than that of judgment debtor-creditor on a business debt, and nothing suggests that appellees were ever actual or potential customers of New MeraBank. The 1099As may reflect New MeraBank's business decision not to thereafter seek to collect any of the debt or deal with it as to any extent potentially collectible or valuable. However, there is no clear and convincing evidence that a purpose of issuing the 1099As was to thereby effect a transfer to appellees of title and ownership of the debt, as opposed to merely complying with what was thought to be required by IRS or RTC regulations; had more than the latter been intended doubtless some more customary or formal method of handling the matter would have been employed.

9

less significant than the 1099A forms. A write-off is merely an accounting practice or convention for reducing to zero the value of an asset as shown on a balance sheet. *See A Dictionary of Accounting* 343 (R. Hussey ed., 1995) (defining "write-off"). A bad debt that has been written off may still be recovered in the future and written back on the books again. *Id.* at 39 (defining "bad debt recovered"). Thus, writing off a bad debt merely reflects the creditor's determination at the time that none of the debt is then either collectible or has any likelihood of ever becoming so, or that any collection expenses will likely exceed receipts, but it does not constitute a legally effective discharge or release of the indebtedness and it does not imply that the creditor intends to thereby legally divest himself of ownership of the debt or to legally preclude any further efforts to collect.

Since there was neither an accord and satisfaction nor a completed gift, it would be anomalous for us to uphold the district court's finding that the RTC released the debt without receiving any payment or relinquishing title to or control over the note, guaranty, or judgment. To hold otherwise would be a dramatic departure from settled Texas law.

*B. Estoppel*

As they did below, appellees invoke the somewhat amorphous doctrine of quasi-estoppel. This form of estoppel does not, at least normally, require either misrepresentation by the party to be estopped or detrimental reliance by the party invoking the estoppel. *See Stimpson v. Plano Indep. School Dist.,* 743 S.W.2d

10

944, 946 (Tex.App.—Dallas 1987, writ denied). *Cf. Matter of Davidson,* 947 F.2d 1294, 1297 (5th Cir.1991) ("[a]lthough detrimental reliance is not a necessary element of quasi-estoppel, we find that the existence of detrimental reliance in this case is an important factor" in determining to apply quasi-estoppel). Appellees rely on general statements in Texas intermediate appellate court opinions to the effect that quasi-estoppel "applies when it would be unconscionable to allow a person to maintain a position inconsistent with one in which he acquiesced, or of which he accepted a benefit," *Vessels v. Anschutz Corp.,* 823 S.W.2d 762, 765-66 (Tex.App.—Texarkana 1992, writ denied), or "precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken by him." *El Paso Nat. Bank v. S.W. Numismatic Inv. G.,* 548 S.W.2d 942, 948 (Tex.Civ.App.—El Paso 1977, n.w.h.). But these overly general statements cannot be taken entirely literally, else every promise or assertion made would be judicially enforceable even though wholly unsupported by any consideration or reliance whatever and even though no benefit to the promisor or assertor, nor detriment to the other party, accrued by reason of the making of the promise or assertion. Actually, quasi-estoppel was not applied in either *Vessels* or *El Paso Nat. Bank.* Indeed, *Vessels* goes on to explain that "one who retains benefits under a transaction cannot avoid its obligations and is estoped to take an inconsistent position." *Id.* at 766, citing *Theriot v. Smith,* 263 S.W.2d 181, 183 (Tex.Civ.App.—Waco 1953, writ dism'd) ("[o]ne who retains benefits

11

under a transaction cannot avoid its obligations, and is estopped to take a position inconsistent therewith"). This seems to be more a precise description of the core basis of equitable estoppel. *See, e.g., Atkinson Gas Co. v. Albrecht,* 878 S.W.2d 236, 240 (Tex.App.—Corpus Christi 1994, writ denied) ("... quasi-estoppel forbids a party from accepting the benefits of a transaction or statute and then subsequently taking an inconsistent position to avoid corresponding obligations or effects"); *Mexico's Industries, Inc. v. Banco Mexico Somex,* 858 S.W.2d 577, 581 n. 7 (Tex.App.—El Paso 1993, writ denied) (same); *Matter of Davidson,* 947 F.2d 1294, 1297 (5th Cir.1991) (same); *Turcotte v. Trevino,* 499 S.W.2d 705, 712 (Tex.Civ.App.—Corpus Christi 1973, n.r.e.) (by virtue of estoppel "[w]here one having the right to accept or reject a transaction takes and retains benefits thereunder, he ordinarily ... cannot avoid its obligation or effect by taking a position inconsistent with it at a later time"). Here, there was never any transaction between or involving appellees and New MeraBank and the issuance of the 1099As was the entirely unilateral, unsolicited act of New MeraBank for or in relation to which New MeraBank received nothing from appellees (or anyone else). Indeed, there is no finding or evidence that New MeraBank received any benefit whatever from the issuance of the 1099As, either insofar as they may have reflected some character of forgiveness of the debt or even insofar as they may merely have reflected New MeraBank's determination that the debt was worthless. Quasi-estoppel has been held inapplicable where the conduct allegedly giving rise to the estoppel is not

12

shown to have benefited the party sought to be estopped. *Stimpson* at 946. Indeed, even where some benefit has been received from the opposite party, quasi-estoppel is not always applied. *Atkinson Gas Co.* at 240. We hold that quasi-estoppel is inapplicable here.

All this is not to say that in analogous circumstances those in a position generally similar to that of appellees would necessarily be without any recourse. In such a situation, equitable estoppel may likely afford relief, as may also a claim for negligent misrepresentation, *provided* in each case that there is a showing of, *inter alia,* detrimental reliance. *See, e.g., Federal Land Bank v. Sloane,* 825 S.W.2d 439, 442 (Tex.1991) (negligent misrepresentation claim requires detrimental reliance); *Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929, 932 (1952) (equitable estoppel requires detrimental reliance). Here, however, there is no evidence or finding of any detrimental reliance whatever by any of the appellees other than Dennis Ratliff, John Ratliff, and Truman Smith (see note 3, *supra*). Hence, none of the appellees other than these three is entitled to any relief whatever. Appellant at oral argument advised that it had no objection to awarding Dennis Ratliff, John Ratliff, and Truman Smith a credit on their liability on the August 1990 judgment to the extent of the federal income taxes they paid in reliance on the 1099As ($1,059.39 each for Dennis Ratliff and John Ratliff and $1,050 for Truman Smith), and we thus hold those three appellees are entitled to such a credit. Because this is the extent of the detriment shown to be suffered by each of these three, none is

13

entitled to any further relief or to complete cancellation of the indebtedness. *See, e.g., Sloane* at 443 (negligent misrepresentation damages limited to reliance damages); *Sun Oil Co. v. Madeley,* 626 S.W.2d 726, 734 (Tex.1981) ("The damages recoverable by a party claiming estoppel ... are limited to the amount necessary to compensate that party for a loss already suffered"); *Keado v. United States,* 853 F.2d 1209, 1218 (5th Cir.1988) ("Recovery under an estoppel theory is limited to the amount necessary to compensate for the loss suffered" and " "One recovering under promissory estoppel should not ... experience a windfall' ").

II. Attorneys' Fees

Appellant and appellees (by cross-appeal) each complain of the district court's denial of their respective requests for an award of attorneys' fees. We reject all these contentions, concluding that neither appellant nor appellees have demonstrated reversible error in the district court's rulings in this respect.

## Conclusion

We conclude that the district court erred by granting any relief to appellees other than Dennis Ratliff, John Ratliff, and Truman Smith, and that as to said three appellees no relief should be awarded other than a credit on their liability on the principal amount of the August 1990 judgment in the amount of $1,059.39 each for Dennis Ratliff and John Ratliff and $1,050 for Truman Smith (said credit in each case to be as of the date each of said parties respectively paid said amounts to the IRS in respect to the 1099As

14

issued them by New MeraBank).

Accordingly, the judgment of the district court is affirmed in part and reversed in part, and the cause is remanded for entry of judgment in conformity herewith.

AFFIRMED in part;   REVERSED in part;   CAUSE REMANDED with instructions.